CAHILL, Appellant, v. CAHILL, Respondent.

*November 25, 1964—January 5, 1965.*

For the appellant there was a brief by *Nelson & Ehr* of Milwaukee, and oral argument by *Irving H. Nelson.*

For the respondent there was a brief by *Patrick T. Sheedy,* attorney, and *David F. Kopplin* of counsel, both of Milwaukee, and oral argument by *Mr. Sheedy.*

BEILFUSS, J. Was the trial court's finding that Mrs. Cahill did not wilfully desert her husband against the great weight and clear preponderance of the evidence?

The right to divorce must be predicated upon a violation of the marital relationship as recognized by the divorce statute. One of the grounds enumerated in the statute is wilful desertion.

Sec. 247.07 (3), Stats., provides a divorce may be granted, "For the wilful desertion of one party by the other for the term of one year next preceding the commencement of the action."

In *Schopps v. Schopps* (1925), 188 Wis. 151, 205 N. W. 829, and *Leach v. Leach* (1954), 266 Wis. 223, 63 N. W. (2d) 73, we recognized four essentials which must be established for a divorce upon ground of wilful desertion. They are (1) a leaving by the other spouse without just cause, (2) such leaving was without intention to return, (3) the separation must be continuous for one year preceding the commencement of the action, and (4) the original leaving, together with the living apart for the statutory period, must be without the consent of the complaining spouse. To these four essentials another should be added, namely, that the leaving and the continued separation for the statutory period was the wilful act of the offending spouse.[1]

---

[1] Wilful desertion can be found even though the original leaving was with consent of the other spouse if the complaining spouse offers in good faith to terminate the separation and the other refuses. *Schopps v. Schopps, supra.* Also refusal to move to the place of residence selected by the husband can constitute wilful desertion. *Gray v. Gray* (1939), 232 Wis. 400, 278 N. W. 708.

If the complaining spouse establishes these five essentials he is entitled to a divorce.

It is without dispute that Mrs. Cahill left the family home in Milwaukee county without just cause; that she did not intend to return; that separation was continuous for more than a year before the commencement of the action; and that she left and remained separated without the consent of Mr. Cahill.

The trial court found that Mrs. Cahill was not insane but was mentally ill at all times concerned and that the desertion was, therefore, not wilful and denied the divorce.

In addition to the facts set forth above, the only evidence of the mental health of Mrs. Cahill consisted of the testimony of Dr. Hurley and letters from Mrs. Cahill's father, a physician, and physicians who examined and treated Mrs. Cahill at the time of and subsequent to her admission to the hospital in New York on August 19, 1960. These letters have very little probative value because they relate to the situation as it existed after the cause of action occurred in addition to being hearsay. The contents of the letters were also considered by Dr. Hurley in arriving at his conclusions set forth below.

On August 2, 1960, at the request of the family court commissioner, Dr. James Hurley made a complete psychiatric examination of Mrs. Cahill.

Dr. Hurley was called at the trial by the plaintiff husband and testified at length on examination by counsel for both sides and the court. Dr. Hurley resides in Milwaukee; he does and has for several years conducted an extensive practice in psychiatry. As appears from the opinion of the trial court, Dr. Hurley is an exceptionally well-qualified expert in the field of psychiatry.

The testimony of Dr. Hurley stands uncontradicted and unimpeached. He was of the opinion that Mrs. Cahill was not on August 2, 1960, nor prior thereto, legally insane. He

testified in substance that Mrs. Cahill was emotionally disturbed; that she had a paranoid personality, but had not reached the stage of paranoid schizophrenia and therefore not insane; that she knew the difference between right and wrong and the nature and quality of her acts, and that she did choose her acts even though she had delusions that motivated them.

The trial court's finding that Mrs. Cahill was not insane but mentally ill cannot stand.

Sec. 51.001, Stats., provides:

"DEFINITIONS. As used in this chapter:

"(1) Mental illness is synonymous with insanity; . . ."

In *State v. Esser* (1962), 16 Wis. (2d) 567, 599, 115 N. W. (2d) 505, we stated the test of insanity to be:

" 'The term "insanity" in the law means such an abnormal condition of the mind, from any cause, as to render the defendant incapable of understanding the nature and quality of the alleged wrongful act, or incapable of distinguishing between right and wrong with respect to such act.' "

The undisputed testimony of Dr. Hurley was that Mrs. Cahill at the times material, did know the nature and quality of her act in leaving her husband and was able to distinguish between right and wrong with respect to her leaving and intention not to return.

We are not prepared to state that the trier of the fact is absolutely bound by the uncontradicted testimony of an expert. However, we do conclude upon the record of this case that the expert, Dr. Hurley, was competent and well qualified, his testimony was not impeached nor his credibility challenged, and his examination and history of Mrs. Cahill complete so as to afford him ample foundation for his opinion. It is further significant that his examination was conducted and his opinion reached as a result of the request of the family court commissioner. Under these circumstances the trial court was not at liberty to disregard the

unimpeached, unequivocal [2] and uncontradicted testimony of Dr. Hurley. This being so, the finding of the trial court that the desertion was not wilful is against the great weight and clear preponderance of the evidence.

In *Caldwell v. Caldwell* (1958), 5 Wis. (2d) 146, 154, 92 N. W. (2d) 356, a divorce action for cruel and inhuman treatment defended upon the ground of uncontrollable irritability due to ill-health, we stated:

"Some courts have stated broadly that insanity is a good defense, but the majority view appears to be that if the nature of the mental illness is such that the victim is conscious of what he does and knows that what he does is not right, although in doing the act he acts under the compulsion of a diseased mind which prevents him from abstaining therefrom, his infirmity is no defense."

To the same affect is 1 Nelson, Divorce and Annulment (2d ed.), pp. 355, 356, sec. 9.06:

"The fact that conduct complained of was due to hallucinations of the spouse charged with it does not prevent such conduct from constituting ground for divorce, if the hallucinations did not amount to insanity. The same is true as to acts of a paranoiac prior to the time such condition became so advanced as to amount to insanity, or the acts of one suffering from psychoneurosis later developing into insanity."

The term "wilful" has been defined in *Milwaukee Corrugating Co. v. Industrial Comm.* (1928), 197 Wis. 414, 420, 222 N. W. 251, thusly:

" 'The words "wilful" and "wilfully" are of somewhat varied signification according to the context in which they are used in particular cases and the nature of the subject under discussion or treatment. They are frequently used in the sense of intentionally, or in other words as implying a purpose or design, or proceeding from a conscious motion

---

[2] *Plainse v. Engle* (1952, 1953), 262 Wis. 506, 56 N. W. (2d) 89, 57 N. W. (2d) 586.

of the will as distinguished from accidentally or involuntarily; and they are accordingly used in the sense of or as equivalent to willingly; designedly; purposely; obstinately; stubbornly; inflexibly; perversely; voluntarily; deliberately; with set purpose; being governed by the will, without regard to reason, or without yielding to reason. . . .' "

We conclude the great weight and clear preponderance of the evidence compel the inferences that Mrs. Cahill was not insane at the time she left her husband and during the statutory period prior to commencement of the action, and that she knowingly and willingly left her husband and their home in Milwaukee with a firm intention not to return.

The finding of the trial court that Mrs. Cahill was mentally ill and did not wilfully desert her husband cannot be sustained.

Mr. Cahill has established his right to a divorce under the statute upon the grounds of wilful desertion. A divorce must be granted to him. Upon remand and granting of a divorce the trial court shall determine Mrs. Cahill's right to a division of property or alimony, or both, as the case may be, and a redetermination of the rights of custody and visitation of the minor children, if advisable, in the sound discretion of the trial court.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with the opinion.

WILKIE, J. (*concurring*). I concur in the result reached by the majority. Since, in my view, on this record Mrs. Cahill was not legally insane under the definition of insanity as stated in *State v. Esser* [1] by either the majority or by the dissenters, I would conclude that: (1) Mrs. Cahill was not legally insane, and (2) in reaching this conclusion we are not reaffirming the definition of insanity as stated by the majority in *State v. Esser*.

[1] (1962), 16 Wis. (2d) 567, 115 N. W. (2d) 505.

I am authorized to state that Mr. Chief Justice CURRIE joins in this opinion.

HALLOWS, J. (*dissenting*). I respectfully dissent because of my dissatisfaction of this court's definition of "legal insanity." My views are set forth in the dissent in *State v. Esser* (1962), 16 Wis. (2d) 567, 115 N. W. (2d) 505, and in my concurring opinion in *Kwosek v. State* (1960), 8 Wis. (2d) 640, 100 N. W. (2d) 339. This court should again take a long, hard look at its definition of legal insanity and the field of mental illness.