IN THE MATTER OF THE GUARDIANSHIP OF
NICHOLAS C. L., a minor:

NICHOLAS C. L., Martin L., and Marlene L.,
Petitioners-Appellants,†

v.

JULIE R. L., Respondent-Respondent.

Court of Appeals

*No. 2005AP1754. Submitted on briefs March 7, 2006.
—Decided May 10, 2006.*

2006 WI App 119

(Also reported in 719 N.W.2d 508.)

† Petition to review denied 10-10-06.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Raymond E. Krek, Joann L. Miller,* and *Shawna L. Lee* of *Krek & Associates, S.C.,* Jefferson, and *Christopher D. Walther* of *Walther Law Offices, S.C.,* Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Thomas M. Bartell, Jr.*, and *Michael A. Baird* of *Stupar, Schuster, & Cooper, S.C.*, Milwaukee.

A nonparty brief was filed by *Michael J. Finn* of *Law Office of Michael Finn*, Hartland.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. SNYDER, P.J. Nicholas C.L., Martin L., and Marlene L. appeal from an order dismissing Martin and Marlene's petition for guardianship of Nicholas.[1] They contend that the circuit court erred in several respects, including applying an incorrect standard of law, imposing an improper burden of proof, and erroneously exercising its discretion when ruling on the credibility of witnesses. The record demonstrates that this was extremely contentious litigation, fraught with tragic circumstances, emotional pleas, and disquieting reports from experts. Nonetheless, we find no error in the circuit court's application of the law, consideration of the evidence, or determinations of credibility. We affirm the court's order for dismissal.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. This case involves a custody battle between paternal grandparents and the biological mother of Nicholas. Julie R.L. and Kevin L. were married and had three children: Nicholas, born on 8/3/1989, Caleb, born on 4/26/1991, and Jared, born on 7/29/1993. In March 2003, Julie filed for divorce, and Kevin moved in

---

[1] Nicholas joined in Martin and Marlene's petition for guardianship, and they submitted a joint brief on appeal. In this opinion, an argument attributed to one of them should be understood to be the collective argument of all three.

with his parents, Martin and Marlene. Following the divorce, Kevin received primary placement of Nicholas, and Julie received primary placement of the two younger sons, Caleb and Jared.

¶ 3. Julie continued to be involved in Nicholas' life but was concerned about his progress at school and rumors that Nicholas was experimenting with drugs and alcohol. On December 4, 2004, Julie filed a petition to reverse placement and have Nicholas live with her. One month later, on January 3, 2005, Kevin was killed in a snowmobile accident. After Kevin's death, Nicholas refused to move back in with Julie.

¶ 4. Julie took Nicholas to counseling sessions to help him work through his grief over the death of his father. She also asked that the counselor address issues regarding her relationship with Nicholas. Following one of the counseling sessions, Julie called the counselor to report that Nicholas had threatened to jump out of her car because he did not want to live with her. Julie made repeated calls to talk to Nicholas, but none were returned until she threatened to call the police. Shortly thereafter, Julie began researching various schools for Nicholas, including military schools and "therapeutic boarding schools." Julie enrolled Nicholas in a Montana boarding school called Spring Creek Lodge Academy (SCL). She hired a transport service, which picked Nicholas up on January 31, 2005, and took him to SCL.

¶ 5. On February 4, 2005, Nicholas' paternal grandparents, Martin and Marlene, filed a petition for guardianship pursuant to WIS. STAT. ch. 880 (2003–04).[2] On February 9, 2005, attorney Michael Finn was ap-

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

pointed guardian ad litem (GAL) for Nicholas. On March 18, the court appointed Raymond Krek as Nicholas' attorney.

¶ 6. A bench trial ensued and lasted three days. The circuit court heard testimony from Dr. Jeffrey Polczinski, Dr. Marc Ackerman and Dr. Thomas Moran, all psychologists who had examined Nicholas. Marlene, Martin, and Julie all testified, and Nicholas' deposition was admitted into evidence. Also, several people associated with SCL testified, including the principal, Nicholas' day-to-day supervisor, the family representative coordinator, and a therapist providing services to Nicholas while he was at SCL. The court also heard from several witnesses who were friends or acquaintances of the family and testified as to their observations of the relationship between Nicholas and Julie or other family relationships. After all evidence was presented and closing arguments concluded, the court rendered its decision dismissing the guardianship petition. Nicholas, Martin, and Marlene appeal.

## DISCUSSION

¶ 7. Nicholas and his grandparents raise multiple issues on appeal. We can sort them into four primary categories. First, they challenge the legal standard applied by the court in deciding not to transfer custody to the grandparents. In the event we determine the court applied the proper standard, they challenge the court's application of that standard to the facts of the case. Next, they contest the court's credibility determinations. Finally, they contend that the court heavily relied on the GAL, who failed to represent Nicholas' best interests. We take each issue in turn.

## *Wisconsin Stat. ch. 880 Guardianship and the Barstad Standard*

¶ 8. The first issue presented is whether *Barstad v. Frazier*, 118 Wis. 2d 549, 348 N.W.2d 479 (1984), an action under Wis. Stat. ch. 767, presents the applicable legal standard for a guardianship action under Wis. Stat. § 880.09. Of particular concern here is the right of a minor over fourteen years old to nominate a guardian under § 880.09(1) and to object to the nomination of a parent under § 880.09(2):

> **Nomination; selection of guardians.** The court shall consider nominations made by any interested person and, in its discretion, shall appoint a proper guardian, having due regard for the following:
>
> **(1)** NOMINATION BY MINOR. A minor over 14 years may in writing in circuit court nominate his or her own guardian, but if the minor is in the armed service, is without the state, or if other good reason exists, the court may dispense with the right of nomination.
>
> **(2)** PREFERENCE. If one or both of the parents of a minor, a developmentally disabled person or a person with other like incapacity are suitable and willing, the court shall appoint one or both of them as guardian unless the proposed ward objects. The court shall appoint a corporate guardian under s. 880.35 only if no suitable individual guardian is available.

¶ 9. Nicholas argues that the circuit court's reliance on *Barstad* ignores the fact that the legislature granted the minor a voice in Wis. Stat. § 880.09(1). Nicholas, who was over the age of fourteen at the time his grandparents petitioned for guardianship, submitted an affidavit to the court nominating his grandparents, Martin and Marlene, as his preferred guardians. In his affidavit, Nicholas also catalogued many struggles he

had in his relationship with Julie and told the court he did not want to live with her. Nicholas contends that the proper standard to be applied here is the best-interest-of-the-child standard, which would honor the minor's legislatively created right to nominate a guardian and to object to the biological parent preference.

¶ 10. In *Barstad*, the court determined that:

> [T]he rule to be followed in custody disputes between parents and third parties is that a parent is entitled to custody of his or her children unless the parent is either unfit or unable to care for the children or there are compelling reasons for awarding custody to a third party.

*Barstad*, 118 Wis. 2d at 568. The court further explained:

> Under ordinary circumstances, a natural parent has a protected right under both state law and the United States Constitution to rear his or her children free from governmental intervention. Absent compelling reasons narrowly defined, it is not within the power of the court to displace a fit and able parent simply because in the court's view someone else could do a "better job" of "parenting."

*Id.* at 567–68.

¶ 11. Nicholas points out that the *Barstad* decision was not unanimous. In her concurrence, Justice Abrahamson wrote, "I do not join the majority in reaching out and addressing constitutional issues not necessary to the decision of the case." *Id.* at 571. Nicholas argues that, under Justice Abrahamson's concurrence, "the test could have been singular, the best-interest-of-the[-]child [Wis. Stat.] § 767.24 statutory standard; thus eliminating the compelling circumstances component addressing the constitutional right of parental custody."

¶ 12. Nicholas points to two cases to demonstrate that a best-interest-of-the-child standard should be applied to a Wɪꜱ. Sᴛᴀᴛ. ch. 880 guardianship proceeding. First, he cites *Anna S. v. Diana M.*, 2004 WI App 45, 270 Wis. 2d 411, 678 N.W.2d 285, which states, "the circuit court's decision on guardianship and placement involves a determination of [the child's] best interests." *See id.*, ¶ 7. Placed in context, however, *Anna S.* lends no support for Nicholas' position. In *Anna S.*, the child's father was deceased, and the birth mother was incarcerated. *Id.*, ¶¶ 2–3. There, the need for a guardian was established, and the best-interest-of-the-child analysis was properly applied in determining which nonparent would serve as guardian.

¶ 13. Nicholas also cites to *Brezinski v. Barkholtz*, 71 Wis. 2d 317, 237 N.W.2d 919 (1976). The court there stated that the "conclusion is inescapable that the best interests test be followed. Nothing in the guardianship section indicates otherwise, although preference is given to certain nominations." *Id.* at 328. However, in *Brezinski*, the mother of the minor children died of gunshot wounds at her residence. *Id.* at 319. The father of the children took them to the police station the same day and was incarcerated and charged with the murder of his wife. *Id.* The hearing there was directed at the choice of a guardian, not whether a guardian was necessary in the first place. *See id.* at 327.

¶ 14. Nonetheless, *Barstad* clearly rejects the best-interest-of-the-child test in custody disputes between a parent and a third party[3] and instead favors a

---

[3] Our supreme court acknowledged that, although grandparents are in a closer relationship with a minor than many third parties, "as between a parent and a grandparent we hold

test that makes it more difficult to separate a child from a parent. *See Barstad,* 118 Wis. 2d at 556 (custody disputes between parents and other relatives cannot be judged on a "best interest" standard). More recently, our supreme court has confirmed that "[a] person who is not a biological or adoptive parent may not bring an action to obtain custody of a minor unless the biological or adoptive parent is 'unfit or unable to care for the child' or there are compelling reasons for awarding custody to a nonparent." *Holtzman v. Knott,* 193 Wis. 2d 649, 664–65, 533 N.W.2d 419 (1995) (citing *Barstad,* 118 Wis. 2d at 568).

¶ 15. Our application of the *Barstad* standard to a WIS. STAT. ch. 880 guardianship petition does not run afoul of the legislature's intent to give a voice to minors over the age of fourteen. Indeed, WIS. STAT. § 880.09(1) does direct the circuit court to afford "due regard" to the minor's nomination of his or her own guardian. That presupposes, however, that the need for a guardian has been established. If it is determined that the birth parent is fit and able to care for the child and no compelling reasons exist to appoint a nonparent guardian, then the minor's nomination of a guardian becomes a moot exercise. The circuit court recognized this and explained:

> [T]he provision in Wisconsin statutes that provides a right of nomination to a minor of 14 years of age or older; it does not come into play here unless the Court finds that there is a need for a guardianship. To be put another way, only if the Court finds unfitness or compelling circumstances, and best interests requiring someone other than the mother to be appointed a

that to deprive a parent of custody the principles one would apply to third parties are applicable." *Barstad v Frazier,* 118 Wis. 2d 549, 555, 348 N.W.2d 479 (1984).

guardian, only then would the Court turn to the nomination of Nicholas . . . .

¶ 16. Any standard that does not consider a parent's constitutional rights would be incomplete. Were we to conclude otherwise, parents would routinely have their parental rights stripped from them simply because a third party might be better situated to tend to the needs of the child. The due process clause of the Fourteenth Amendment prevents this by protecting "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). We will not employ any analysis that disregards the constitutionally protected right of the parent.

¶ 17. In *Howard M. v. Jean R.*, 196 Wis. 2d 16, 24, 539 N.W.2d 104 (Ct. App. 1995), we addressed the best-interest-of-the-child standard in the context of WIS. STAT. 767.325(1)(b), which mandates consideration of the best interest of the child for revisions of legal custody and physical placement orders after two years have passed from the date of the initial order. We explained that "to conclude that 767.325(1)(b) provides the proper test for termination of minor guardianship proceedings where the contest is between a parent and a third party, we would then have to conclude that 767.325(1)(b) is unconstitutional in that setting.". *Howard M.*, 196 Wis. 2d at 24. Likewise, if we were now to conclude that guardianship proceedings under WIS. STAT. 880.09 are guided solely by the best interest of the child where the dispute is between a parent and a third party, we would then have to conclude that the statute violates a parent's constitutionally protected right to make decisions regarding how to raise his or her children. We are to interpret statutes so as to avoid a

830

finding of unconstitutionality. *See Basinas v. State*, 104 Wis. 2d 539, 546, 312 N.W.2d 483 (1981).

*Compelling Circumstances Under Barstad*

█

¶ 18. Nicholas also argues that the circuit court misapplied the *Barstad* standard. Specifically, he argues that compelling circumstances for appointing his grandparents as his guardians existed as a matter of law. *Barstad* states, "Compelling reasons include abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child." *Barstad*, 118 Wis. 2d at 568. Whether compelling reasons to award custody to a third person exist is a mixed question of fact and law. *See Howard M.*, 196 Wis. 2d at 20. We separate mixed questions of fact and law into two components: findings of fact will not be set aside unless clearly erroneous, and questions of law are reviewed de novo. WIS. STAT. § 805.17(2); *Abbas v. Palmersheim*, 2004 WI App 126, ¶ 6, 275 Wis. 2d 311, 685 N.W.2d 546.

¶ 19. Nicholas contends that the circuit court, in its determination that compelling circumstances did not exist, "essentially required Nicholas and his grandparents to prove **all** of the listed reasons [in *Barstad*]." Nicholas argues that the extended "[s]everence" of the parent-child relationship in and of itself constituted a compelling circumstance as a matter of law. The circuit court, however, stated:

> In the court's view the ... strongest theory advanced by the petitioners relates to combining the effect of the extended disruption with what Dr. Ackerman referred to as fringe parenting techniques. That is, if we add up the extended disruption to every negativity

831

about [Julie's] parenting or conduct relative to Nicholas, taken as a whole do those circumstances result in a situation where there is a drastic, negative effect on the welfare of the child, and a compelling circumstance justifying a guardianship to the nonparent.

The court went on to review specific aspects of Dr. Ackerman's analysis, Dr. Moran's analysis, Julie's parenting techniques, and the practices at SCL. After exhaustive review of the evidence, the circuit court concluded:

> Although the Court [is] not in agreement with quite a number of the . . . estrangement points, or the fringe parenting techniques, or the marginal abusive claims of Dr. Ackerman and others here, that still is insufficient to reject the conclusion that the substantial interruption of [the] parent-child relationship, coupled with parenting is insufficient. Because even without any smoking guns or bombshells the substantial enough accumulation of little things could add up to enough to produce a compelling circumstance harmful to Nicholas.

> I have considered that, but I reject that conclusion as being unsupported by the evidence as the Court, as the fact finder interprets it.

¶ 20. The court stated at the outset of its oral ruling that "the case law has not [set forth] a comprehensive list of every possible compelling circumstance, [however] a number of potentially compelling circumstances have been mentioned in the cases." The court did not treat the *Barstad* examples as mandatory factors but rather as a guide in assessing whether compelling reasons supported the appointment of a third-party guardian. This is a proper application of the law to the facts.

832

¶ 21. Nicholas asks us to review the evidence and come to a different conclusion than the circuit court, arguing that the evidence clearly demonstrates compelling circumstances for severing Julie's relationship with Nicholas. He emphasizes his close relationship with his grandparents, previous confrontations with Julie, his extended separation from Julie, and what he perceives as Julie's utter disregard for his plight at SCL. Whether the facts fulfill a particular legal standard is a question of law that we review de novo. *See State v. Brown,* 2005 WI 29, ¶ 34, 279 Wis. 2d 102, 693 N.W.2d 715. Here the record does indeed demonstrate a tumultuous relationship between Julie and Nicholas and an extended separation as well; nonetheless, the evidence shows consistent attempts by Julie to keep in contact with Nicholas, to provide for his physical well-being, to obtain counseling for him, to focus on his academic performance, and to address suspected alcohol or drug experimentation behavior by Nicholas. Furthermore, the extended separation cannot be attributed to Julie alone. We agree with the circuit court's conclusion that the extended estrangement between Nicholas and Julie was likely the result of a combination of things Julie did, Nicholas' father did, and perhaps some things Nicholas' grandparents did.

¶ 22. "Absent compelling reasons narrowly defined, it is not within the power of the court to displace a fit and able parent simply because in the court's view someone else could do a 'better job' of 'parenting.'" *Barstad,* 118 Wis. 2d at 567–68. Rather, the proper inquiry is whether extraordinary circumstances that drastically affect the welfare of the child compel the court to transfer custody from the parent to a third party. *See id.* at 568. Our review of the record reveals

that extraordinary circumstances, such that a court would be compelled to override the constitutionally protected rights of a parent, did not exist.

### Evidentiary Rulings of the Circuit Court

¶ 23. Nicholas and his grandparents challenge the circuit court's determination that Nicholas' testimony was not credible. However, the trial court is the ultimate and final arbiter of the credibility of witnesses, and we must accept the trial court's credibility determination. *See Kimberly Area Sch. Dist. v. Zdanovec*, 222 Wis. 2d 27, 50, 586 N.W.2d 41 (Ct. App. 1998). An appellate court will not overrule a circuit court's credibility determination absent a finding that it is "inherently or patently incredible," or "in conflict with the uniform course of nature or with fully established or conceded facts." *Chapman v. State*, 69 Wis. 2d 581, 583, 230 N.W.2d 824 (1975) (footnotes omitted). The record provides us with substantial insight into the circuit court's assessment. With regard to Nicholas' credibility, the court stated:

> I want to comment on Nicholas' testimony in his deposition. I suppose the words I'm about to use may seem negative, and they're not so much negative as descriptive, we're talking about a child, albeit one who is 15 years old. I found the substantial amount of Nicholas' testimony to be fairly characterized as whining. He didn't like certain food his mom provided. He didn't like that the pizza was vegetable pizza sometime[s]. He didn't like [that] he was punished for stealing candy at the roller rink, or taking an extra half glass of milk . . . .
>
> . . . .

Nicholas has a strong motivation here with respect to his testimony, to try and get his way . . . .

In light of his age level, his testimony, and his motivation I have reached the conclusion that he in many respects has exaggerated, edited, or misreported facts. And I don't find him especially credible . . . where his testimony is contrary to his mother, others, and generally I tend to believe his mother.

We will not quarrel with this credibility determination.

¶ 24. Nicholas also contends that under *Cahill v. Cahill*, 26 Wis. 2d 173, 178–79, 131 N.W.2d 842 (1965), the circuit court "is not at liberty to disregard the unimpeached, unequivocal and uncontradicted testimony of [Dr. Ackerman and Dr. Moran]." However, in *Cahill*, our supreme court wrote: "We are not prepared to state that the trier of the fact is absolutely bound by the uncontradicted testimony of an expert." *Id.* at 178. In deciding what weight to afford the experts' testimony, the circuit court explained as follows:

Dr. Ackerman puts great weight on, basically he relies without question I would say in what Nicholas reported about the history, conduct of the household, as it relates to his mother. And yet I find Nicholas' testimony to not be reliable. So, Dr. Ackerman's strong reliance on what Nicholas had to say . . . causes some undermining of the weight of his other opinions.

Dr. Ackerman . . . spoke of a need or desire to use the least restrictive placement or treatment necessary or appropriate to address an issue. And, of course, that is a legal standard the courts are often bound under, juvenile court placements, for example; criminal sentencing, for example, when it comes to incarceration. However, I want to make it clear because this is another distinction between Dr. Ackerman's opinion on a psy-

chological basis, and the legal rules the Court follows: A parent is not bound to use the least restrictive methodology, treatment, or placement in handling their own child . . . .

. . . .

Now with respect to Dr. Moran he obviously has strong expertise in educational psychology. I found his testimony helpful in understanding Nicholas' public school grades and progress, and what that situation was. Like Dr. Ackerman he obviously is as skeptical or disapproving of some things that are legal in this state like corporal punishment, and the Court needs to take account of that and how to weigh his testimony, and how to weigh Dr. Ackerman's testimony.

The court provided a clear explanation of the disconnect between the psychological school of thought employed by the experts and the legal rules applicable to parents in the state of Wisconsin. It also explained that the experts' opinions were based on information provided by Nicholas, which the court considered suspect. We are satisfied that the circuit court's rejection of portions of the experts' testimony reflected a proper exercise of its discretion.

### Role of the Guardian ad Litem

¶ 25. Finally, Nicholas and his grandparents take issue with the GAL's performance and with the court's reliance on the GAL's recommendations. They contend that "the circuit court's reliance . . . was misplaced, because the guardian ad litem exceeded his statutory role of being an advocate for the best interest of Nicholas, instead advocating for Julie's rights." The role of the GAL is not addressed in the guardianship statutes, but in the chapter on actions affecting the family it is defined as follows:

> "The guardian ad litem shall be an advocate for the best interests of a minor child as to paternity, legal custody, physical placement, and support. The guardian ad litem shall function independently . . . and shall consider, but shall not be bound by, the wishes of the minor child or the positions of others as to the best interests of the minor child.

WIS. STAT. § 767.045(4).

¶ 26. The GAL appointed in this guardianship action was the same GAL who participated in the divorce action between Julie and Kevin. He was familiar with the family dynamic. The GAL communicated Nicholas' wishes to the court. He acknowledged that he did not necessarily endorse the program at SCL. Further, he agreed with Dr. Ackerman's statement that Julie "cares deeply about what happens with her son, and wants what is best for him." The GAL concluded that Nicholas' best interests would not be served by granting the grandparents' petition for guardianship.

¶ 27. Though the GAL's recommendation to the court supported Julie's position, the GAL did not function as an "advocate for Julie's rights" as characterized by Nicholas. Nicholas seems to believe that the GAL was bound to advocate for his choice of guardian. That, however, is not the GAL's responsibility. Rather, "[a]dvocating [for the best interests of the child] may require advocating something contrary to the child's wishes." *Wiederholt v. Fischer*, 169 Wis. 2d 524, 536, 485 N.W.2d 442 (Ct. App. 1992). Based on his investigation and experience, Nicholas' GAL did not believe that there were compelling circumstances that justified transferring custody to Nicholas' grandparents.

¶ 28. Nicholas asserts that the circuit court, "by its own admission, relied heavily on the guardian ad

litem's personal analysis of the law as applied to this case." He references the court's oral ruling in which the court stated:

> I also want to remark at this point that I found [the GAL's] closing argument remarks that went to the policy and effect of granting guardianships to other than parents, grandparents in this case, against the expressed desire of a parent, I found his remarks on the whole subject to be quite apropos.

We refuse to equate the court's characterization of the GAL's argument as "apropos" with evidence of heavy reliance. The circuit court's treatment of all of the evidence in this case is exhaustive. It fills more than fifty pages of transcript and addresses many facets of Julie's relationship with Nicholas, the grandparents' role in the relationship, the impact of Kevin's death on Nicholas, Nicholas' experiences at SCL, the experts' reports and recommendations, and much more. The court's thorough, thoughtful analysis contradicts Nicholas' suggestion that the court simply substituted the GAL's judgment for its own.[4]

## Other Issues

¶ 29. Nicholas and his grandparents presented six separate issues for our consideration. Those not directly addressed are resolved by our foregoing analysis.

---

[4] We recognize that the caseload in the circuit courts often impedes extensive treatment of multiple issues; therefore, we commend the circuit court for its meticulous and comprehensive on-the-record rationale. This case presents important issues regarding the rights of parents and the well-being of their children. The circuit court's analysis demonstrates a keen understanding of the claims made and the impact of its ruling on the parties involved.

To the extent that we have not specifically addressed an argument raised in the appeal, the argument is deemed rejected. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).

## CONCLUSION

¶ 30. In a custody dispute triggered by a WIS. STAT. ch. 880 petition for guardianship, where the dispute is between a birth parent and a nonparent, the threshold inquiry is whether the parent is unfit, unable to care for the child, or whether there are compelling reasons for awarding custody to the nonparent. *Cf. Barstad*, 118 Wis. 2d at 567–68; *Holtzman*, 193 Wis. 2d at 664–65. The circuit court properly applied this standard to the evidence and determined that extraordinary circumstances that drastically affect the welfare of the child, such that the court would be compelled to award guardianship to the grandparents, did not exist. The court's discretionary rulings regarding the evidence are supported by the record facts and are explained in a rational way on the record. The GAL properly considered the best interests of Nicholas based on his research and experience and made his recommendation accordingly. There is no evidence in the record that the court simply adopted the GAL's opinion as its own. After a full review of the facts and the law, we detect no error underlying the circuit court's order.

*By the Court.*—Order affirmed.