BRENNAN, J.[1]
¶1 R.H. appeals from an order terminating her parental rights to E.M. on the grounds that the evidence is not sufficient to support the trial court's finding of unfitness at the grounds phase based on R.H.'s failure to assume parental responsibility. The evidence, viewed in the light most favorable to the court's finding, supports the trial court's finding that R.H. had failed to assume parental responsibility for E.M. because she had not "accept[ed] and exercise[d] ... significant responsibility for the daily supervision, education, protection and care of the child." WIS. STAT . § 48.415(6)(b). We therefore affirm.
BACKGROUND
¶2 E.M. was born May 5, 2016. E.M. was taken into custody May 8, 2016, and subsequently placed with the adoptive mother of his half-sister. On September 15, 2017, the State filed a petition to terminate R.H.'s parental rights on grounds of continuing CHIPS and a failure to assume parental responsibility. The grounds phase was tried to the court April 9-11, 2018. In addition to R.H., the following witnesses testified: the initial assessment social worker, the ongoing case manager, a psychologist who examined R.H., a visitation supervisor who had supervised R.H.'s visits with E.M., and R.H.'s therapist.
¶3 Specifically, the social worker who conducted the initial assessment of R.H. testified that when E.M. was born, nursing staff had expressed concern about R.H.'s ability to care for the infant. The social worker testified that she learned that child protective services agencies had been involved with R.H.'s older children since 2008 and that R.H.'s four older children had been permanently removed from her care. The records indicated that R.H. had long had issues with her ability to maintain stability in housing, her ability to manage her income to buy what her children needed, and her ability to keep her children safe from abuse. She also had a history of failing to follow through with mental health treatment and taking prescribed medications.
¶4 The ongoing case manager testified that at visits, R.H. had "very extreme" emotional outbursts, sometimes "to the point of terminating visits." She testified that R.H. had been referred to multiple parenting assistance resources but that even when she attended, she showed an inability to grasp the concepts of the class. She testified that in one program to which she had referred R.H., R.H. attended only nine of twenty classes. She testified that she had observed R.H. have "very quick mood swings at times where she becomes extremely depressed, sad, uncontrollable crying" and sometimes she is "extremely angry and yelling." She described a point at which R.H. abruptly left Milwaukee for Green Bay and stayed away for a month, missing visits with E.M.
¶5 The psychologist who examined R.H. testified as follows:
I continued the diagnosis of a bipolar disorder because her mood dysregulation is substantial. It is extreme. It is intense. It shifts quickly. And it isn't something that she can regulate easily....
....
... So she may have times where she is agitated, angry, irritable, explosive, and other times where she is very slow and depressed and unhappy and can't get out of bed. She may have times where she is hyper in talking a lot and very active and full of energy. So those shifts happen very quickly and very intensely just beyond what she can control.
....
... [S]he doesn't have the capacity to change these things in a substantial way. What she has done and how she has lived is likely how she will continue to live. She is not aware of herself. She is not invested in treatment. She is not willing to make adjustments. That's what I saw when I was with her.
¶6 The ongoing case manager testified about the conditions for return contained in the dispositional order from the CHIPS case. She testified that the two concerns regarding R.H. were that she "has dangerously impulsive behavior" and that she "lacks the skills, knowledge and/or motivation to safely parent a child." She testified that R.H. had not consistently attended visitation and that when she did attend visits, she had failed to pay attention to E.M., had failed to supervise him, and had often been focused on her phone throughout the visit. She testified that one agency that supervises visitation had discharged R.H. in April 2017 "due to her behaviors within those visits of defiance and emotion, high emotions" and safety concerns. A different agency agreed to supervise R.H.'s visitation the following month, but it ultimately discharged her for similar reasons. She testified that the agency staff reported that "[m]any visits were ended" due to "very high emotions." She testified that "as time passed, the inconsistency in visits was almost weekly" and "[t]here were cancellations to the point that they ultimately discharged her when she was reporting she no longer wanted visits." She described one visit where R.H. walked out of the room E.M. was in, and E.M. pulled a television over onto himself, causing injury. She testified that R.H. had never lived with E.M., provided for his daily supervision, or been involved in decisions about his day care. She testified that R.H. had attended only three of E.M.'s doctor visits in the two years he was in out-of-home care.
¶7 The ongoing case manager also testified that R.H. had never progressed from fully supervised visits with E.M. and that there was no basis for moving to less restrictive visitation.
¶8 On the issue of failure to assume parental responsibility, the trial court made the following finding:
[R.H.] certainly has a parental relationship. She certainly loves [E.M.] ... But as this is defined in Wisconsin law, it talks about does she exercise ... responsibility for his daily supervision, education, protection, and care. And the answer to that question is she doesn't, because she [has] really at this point not shown herself capable of doing that. She can provide for part-time care, and she does that, but she hasn't been involved in making medical decisions for him. She hasn't been involved in making day care decisions for him. And she provides for him when he is with her. Her circumstances are limited economically. She provided gifts and things, but she is not able to provide for his day-to-day care, his day-to-day support.
So I am going to find, when I view this in the totality of the circumstances here, I will find that the State has shown that [R.H.] has failed to assume parental responsibility[.]
¶9 The dispositional hearing was held on April 12, 2018, and the court found that it was in E.M.'s best interest to grant the TPR petition. This appeal follows.
DISCUSSION
¶10 R.H. challenges the sufficiency of the evidence as to the finding by the trial court that R.H. failed to assume parental responsibility.[2] We independently review whether the evidence is sufficient. See Tammy W-G. v. Jacob T. , 2011 WI 30, ¶17, 333 Wis. 2d 273, 797 N.W.2d 854. When reviewing the findings by a trier of fact, we consider the evidence in the light most favorable to those findings. See id. , ¶39. Under that standard, an appellate court will affirm "unless the evidence, viewed most favorably to the state" is "so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably," could have reached the result being appealed. State v. Poellinger , 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). "[T]he trial court is the ultimate and final arbiter of the credibility of witnesses, and we must accept the trial court's credibility determination." Nicholas C.L. v. Julie R.L. , 2006 WI App 119, ¶23, 293 Wis. 2d 819, 719 N.W.2d 508. The State must make its case by clear and convincing evidence. See Ann M.M. v. Rob S. , 176 Wis. 2d 673, 682, 500 N.W.2d 649 (1993).
¶11 Failure to assume parental responsibility "shall be established by proving that the parent ... [has] not had a substantial parental relationship with the child." WIS. STAT . § 48.415(6)(a). A substantial parental relationship "means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." Sec. 48.415(6)(b) (emphasis added). When the fact-finder evaluates whether a person has had such a relationship with the child, the fact-finder may consider such factors including but not limited to "whether the person has expressed concern for or interest in the support, care or well-being of the child, [and] whether the person has neglected or refused to provide care or support for the child [.]" Id.
¶12 Appellate counsel recites facts about R.H.'s efforts-that R.H. took advantage of medical treatment during her pregnancy with E.M., took recommended prenatal vitamins, did not smoke, or consume alcohol or drugs during her pregnancy, had housing at the time of E.M.'s birth equipped with food and infant supplies, stayed at the hospital after E.M. was born where she fed and cared for E.M., and was open to help from the nursing staff about the proper care for the infant. Appellate counsel points out that R.H. expressed concern to the social workers about her child, participated in visits with her child, and attended parenting classes.
¶13 The question presented in this appeal is whether the evidence presented is "so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably" could have found that R.H. failed to assume parental responsibility for E.M. See Poellinger , 153 Wis. 2d at 501. "[W]hen faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." Id. at 506-07. R.H. merely asserts that there were other "historical facts" that showed efforts she made to assume parental responsibility, such as taking prenatal vitamins while she was pregnant, but we are bound to "follow the inference drawn by the trier of fact" unless the evidence on which the finding is based is "incredible as a matter of law." See id. R.H. does not assert that any of the evidence on which the trial court based its finding is incredible as a matter of law.
¶14 Thus, R.H.'s challenge to the sufficiency of the evidence must fail. We affirm the order of the trial court.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16).
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

R.H. also challenges the finding as to the CHIPS count. The trial court's order can be affirmed if this court finds that the evidence is sufficient as to either of the grounds asserted. We address the sufficiency of the evidence as to the finding that R.H. failed to assume parental responsibility, and because it is dispositive of this appeal, we need not address the CHIPS ground. See Gross v. Hoffman , 227 Wis. 296, 300, 277 N.W. 663 (1938) ("As one sufficient ground for support of the judgment has been declared, there is no need to discuss the others urged.").