BRENNAN, J.[1]
¶1 K.L. appeals from a July 24, 2018 order terminating his parental rights to four of his children, J., S., O., and M., who at the time of the order were aged ten, eight, seven, and five, respectively.[2] He argues that the trial court's finding that he failed to assume parental responsibility[3] is clearly erroneous because the evidence is not sufficient to support it.[4] He argues that the trial court failed because its finding focused on "only the period since [the children's] removal [from the family home]," and that the trial court "need[ed] to look at the actions of K.L. throughout the lives of the children as a whole and not simply since their removal." We have reviewed the record, and it flatly contradicts this view of the trial court's finding. Ample evidence in the record supports the finding of the trial court. We therefore affirm.
BACKGROUND
¶2 The four children affected by the termination of parental rights order in this case were the youngest in a family that was the subject of at least twenty-six documented referrals to Child Protective Services (CPS) for neglect, physical abuse, and sexual abuse between June 2010 and November 2015. They were removed from the family home, along with three older siblings, for three months in 2013, but that CHIPS case was dismissed and the children returned home. Three years later, in September 2016, the children were again removed, along with two older siblings, and all were found to be children in need of protection and services. All of the children have been in out-of-home placement since that time.
¶3 A petition for termination of K.L.'s parental rights was filed in November 2017 as to each of the six children removed from the home in 2016. The petition alleged, with regard to the failure to assume parental responsibility, that K.L.'s behavior was "dangerously impulsive and out of control." The petition documented "numerous reports to CPS for neglect, physical abuse and sexual abuse, dating back to 2010." It documented K.L.'s "history of drinking alcohol all day and night, with neighbors reporting that sometimes he made multiple trips to the liquor store in one day." It described a 2015 incident of domestic violence in which K.L. choked and punched the children's mother in front of them, threatened to kill her, and chased her down a street with a knife. K.L. was charged in connection with that incident; the case resulted in a finding that he was not competent and was unlikely to regain competence. K.L. was remanded into the sheriff's custody and since that time has resided in an adult group home, subject to a Chapter 51 commitment.
¶4 Testimony from the ongoing case manager related that K.L. and his family arrived in the U.S. in 2009 from a refugee camp. K.L. and his wife had five children when they arrived; three children were born in the U.S. In 2010, when K.L. was in the home, there were referrals to CPS for neglect, physical abuse, and sexual abuse of K.L.'s children. In 2011, caseworkers worked with the family for about nine months. From May 2012 through September 2017, the family received wraparound services. On two separate occasions, intensive in-home services were provided. The recognized issues were domestic violence issues and inappropriate sexual touching of the children by male guests in the home who were not blood relatives. When asked what safety risks were related to K.L., the case manager testified that during the time that K.L. lived in the home, "it was always that lack of supervision piece ... [b]ecause that was occurring even when he was not incarcerated. The domestic violence and also the AODA."
¶5 The case manager also testified in detail as to the gross medical neglect, including extensive dental issues requiring oral reconstructive surgery for all of the children. Two of the children had MRSA. One child required emergency surgery for a severe infection. Two of the children tested positive for herpes. With regard to school attendance, the case manager testified that while in the parental home, "[t]here were large gaps in attendance where the children would not go for months at a time." The case manager testified that when she met with K.L. to discuss the children, "He just kept saying that everything was [his wife's] fault that the children were in care." The case manager testified that K.L. was in the custody of the sheriff from July 2015 through August 2016 and that thereafter he was transferred to Mendota for mental health treatment before being moved to a group home. He is subject to a Chapter 51 commitment; he lives in a group home; he has no independent responsibility for housing, medical, dental, or food preparation; and he is under twenty-four hour supervision. Visits with K.L. and the children were arranged, and he saw the children once weekly for two hours. When he had the opportunity to expand the visits, "[h]e did not want longer than two hours."
¶6 On the issue of failure to assume parental responsibility, the trial court made the following finding:
The State has established to a reasonable certainty the ... failure to assume claim.
....
... [K.L.] just does not have the capacity to safely parent. And that's the ultimate condition of any CHIPS order. He hasn't met that. He cannot meet that. He will not meet that.
... Some of these children have been presumptively in his care for significant periods of their lives. But this exposure of children to a dangerous or hazardous living environment and assessing the substance of the relationship based upon the totality of the circumstances of the children's lives, I go back to what I said at the beginning: Mental health disabilities fueling substance abuse problems, fueling domestic violence problems, fueling a gross lack of supervision, fueling sexual victimization of the children, fueling sexual interaction on the part of the children, in all likelihood, you know, if this isn't within the category of exposing the children to a dangerous or hazardous living environment to an extent that a court would conclude that there's not the exercise of significant responsibility for the daily supervision, protection and care of these children, then I don't know what would be.
¶7 The trial court found K.L. unfit as to each of the six children and proceeded to the disposition as to the youngest four. Following the dispositional hearing, the trial court found that it was in the children's best interest to grant the termination of parental rights petition. This appeal follows.
DISCUSSION
¶8 K.L. challenges the sufficiency of the evidence supporting the finding by the trial court that K.L. failed to assume parental responsibility. We independently review whether the evidence is sufficient. See Tammy W-G. v. Jacob T. , 2011 WI 30, ¶17, 333 Wis. 2d 273, 797 N.W.2d 854. When reviewing the findings by a trier of fact, we consider the evidence in the light most favorable to those findings. See id. , ¶39. Under that standard, an appellate court will affirm "unless the evidence, viewed most favorably to the state" is "so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably," could have reached the result being appealed. State v. Poellinger , 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). "[T]he trial court is the ultimate and final arbiter of the credibility of witnesses, and we must accept the trial court's credibility determination." Nicholas C.L. v. Julie R.L. , 2006 WI App 119, ¶23, 293 Wis. 2d 819, 719 N.W.2d 508. The State must make its case by clear and convincing evidence. See Ann M.M. v. Rob S. , 176 Wis. 2d 673, 682, 500 N.W.2d 649 (1993).
¶9 Failure to assume parental responsibility "shall be established by proving that the parent ... [has] not had a substantial parental relationship with the child." WIS. STAT. § 48.415(6)(a). A substantial parental relationship "means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." Sec. 48.415(6)(b) (emphasis added). When the fact-finder evaluates whether a person has had such a relationship with the child, the fact-finder may consider such factors including but not limited to "whether the person has expressed concern for or interest in the support, care or well-being of the child, [and] whether the person has neglected or refused to provide care or support for the child[.]" Id.
¶10 K.L. argues that the trial court must "look at the actions of K.L. throughout the lives of the children as a whole and not simply since their removal [from the parental home]." K.L. argues that "the record shows that prior to removal, K.L. had attained 'acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child[ren].' "
¶11 In fact, the record shows the opposite. The record details the lives of four children who were to a shocking degree deprived of daily supervision, education, protection and care-despite years of extensive services to K.L. and his wife. Aside from his conclusory statement, K.L. points to no evidence to the contrary. He describes no specific instances that demonstrate his exercise of significant responsibility toward the children, at any time, before or after removal. As the trial court specifically noted, the evidence presented showed that the children were subjected to severe domestic violence, substance abuse, medical neglect, and educational neglect, all of which occurred while K.L. was in the home and before the children were removed. The evidence showed that in the period after the children were removed, K.L. participated in visits without interaction with the children and did not wish to spend more than two hours per week with them.
¶12 K.L.'s challenge to the sufficiency of the evidence fails. We affirm the order of the trial court.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

These appeals are decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The children's dates of birth are as follows: J., December 8, 2007; S., September 14, 2009; O., February 28, 2011; and M., March 26, 2013.

Failure to assume parental responsibility is one of several grounds for termination of parental rights. A parent fails to assume parental responsibility when the parent fails to "accept[ ] and exercise ... significant responsibility for the daily supervision, education, protection and care of the child." See Wis. Stat. § 48.415(6)(b).

K.L. also challenges the trial court's finding on the CHIPS count. The trial court's order can be affirmed if this court finds that the evidence is sufficient as to either of the grounds asserted. We address the sufficiency of the evidence as to the finding that K.L. failed to assume parental responsibility, and because it is dispositive of this appeal, we need not address the CHIPS ground. See Gross v. Hoffman , 227 Wis. 296, 300, 277 N.W. 663 (1938) ("As one sufficient ground for support of the judgment has been declared, there is no need to discuss the others urged.").