COURT OF APPEALS
DECISION
DATED AND FILED

December 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1079**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2020CV114**

**IN COURT OF APPEALS
DISTRICT IV**

PETITIONER,

    PETITIONER-RESPONDENT,

  V.

WALFRED E. KIVISTO,

    RESPONDENT-APPELLANT.

          APPEAL from an order of the circuit court for Waupaca County: VICKI L. CLUSSMAN, Judge.  *Affirmed*.

          Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

          **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Walfred Kivisto appeals a harassment injunction order issued pursuant to WIS. STAT. § 813.125 (2019-20).[1] Kivisto argues that his conduct did not satisfy the statutory standard for harassment. We disagree and affirm.

¶2 The circuit court may not grant a harassment injunction under WIS. STAT. § 813.125(4) unless, after holding a hearing, the court "finds reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner." *See* § 813.125(4)(a)3. "Harassment" in this context means "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose." *See* § 813.125(1)(am)2.

¶3 The petitioner in this case was Kivisto's teenage neighbor. The circuit court held an evidentiary hearing on the petition. The witnesses were the petitioner's father, the petitioner, and Kivisto. We summarize some of their testimony before turning to our analysis.

¶4 The petitioner's father testified that, when the petitioner would leave for school at 6:15 in the morning, Kivisto would sit and wait for her in a chair outside or by a window inside his house. The father also testified that there were times when he and the petitioner would be on their driveway and Kivisto would run to the edge of his driveway "to make the big L sign like we're losers." The petitioner's father stated that, on one occasion, Kivisto came walking down the road toward the petitioner with his dogs while yelling and screaming at her. On another occasion, after there had been a motor vehicle accident involving a deer nearby, Kivisto put a

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

sign on his mailbox that had a heart with an arrow through it that stated something like: "[Petitioner's father], little [petitioner], and poor deer, don't worry, I'll take care of it."

¶5 The petitioner testified that she was afraid of Kivisto and felt as if he was stalking her. She testified that when Kivisto waited for her on his chair outside, he would cross his arms or make an L sign with his hand on his forehead. She also testified that she believed that the "letter" from Kivisto regarding the deer was an attempt to intimidate her.[2]

¶6 Additionally, the petitioner described other instances of conduct by Kivisto. She testified that there were two instances in which Kivisto grabbed his genital area while she and her father were driving by, once when only her father saw the gesture and another time when she saw the gesture. The petitioner testified that the time she saw the gesture, Kivisto was looking at her and she believed it was directed at her "[b]ecause of everything that he does to try to get [her] attention." The petitioner testified that there was another occasion when Kivisto stopped her as she was driving down the road and "made sure that [she] could not go past."

¶7 The petitioner further testified that she tried to stop paying attention to Kivisto, but Kivisto then nailed a stuffed duck to a tree facing her house. She testified that she found this incident "very scary," and that it made her afraid to live in her house. The petitioner also testified that Kivisto placed a dryer at the end of his property with an L on it, which she believed was another attempt to intimidate her. On another occasion, while she was working outside, Kivisto tried to get her

---

[2] Based on context, it appears that the "letter" the petitioner described is the same item that her father described as a "sign" that Kivisto put on his mailbox.

attention by waving and "hooting" at her and then whistled for about twenty minutes.

¶8      Kivisto testified that he had never done anything to threaten the petitioner and that he had not had any conversations with her in the past few years. He testified that he watched the petitioner when she left for school so that he knew when to let his dogs out. He denied grabbing his genitals in front of the petitioner but admitted grabbing them in front of the petitioner's father. He testified that the dryer on his property contained political messages, that the L stood for "lying loser Biden," and that the petitioner was also a "lying loser."

¶9      The circuit court concluded that, based on the totality of Kivisto's conduct, the evidence was sufficient to show that Kivisto repeatedly engaged in acts that intimidated the petitioner and served no legitimate purpose. The court found that Kivisto made gestures to the petitioner indicating that she was a loser or was lying. The court further found that the petitioner saw Kivisto grab his genitals on at least one occasion. The court also found that the L on the dryer was intended to further harass or intimidate the petitioner. The court granted the petitioner's request for a harassment injunction against Kivisto for a period of four years.[3]

¶10      The circuit court's decision to grant a harassment injunction is discretionary. *Board of Regents v. Decker*, 2014 WI 68, ¶20, 355 Wis. 2d 800, 850 N.W.2d 112. However, as noted above, the court may not issue the injunction unless it "finds reasonable grounds to believe" that the respondent has engaged in harassment as defined in the statutes with intent to harass or intimidate the petitioner. *See* WIS. STAT. § 813.125(1)(am)2. and (4)(a)3.; *see also Decker*, 355

---

[3] The circuit court declined to prohibit Kivisto from possessing a firearm as part of the injunction.

Wis. 2d 800, ¶20. This "finding" of reasonable grounds "presents a mixed question of fact and law." *Decker*, 355 Wis. 2d 800, ¶20. An appellate court will "uphold the factual findings of the circuit court unless they are clearly erroneous." *See id.* However, whether "reasonable grounds" exist to grant the injunction is a question of law for our independent review. *See id.*; *Welytok v. Ziolkowski*, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359.

¶11 Kivisto's primary argument, as we understand it, is a legal one for our independent review. He contends that the circuit court erred in granting the injunction because his conduct as described by the petitioner and her father does not amount to harassment as defined in the statutes. He contends that "[n]othing that has been complained of by the Petitioner in this case amounts to intentional harassment or intimidation of the Petitioner." Similarly, he contends that "[n]othing complained of here amounts to repeated acts to harass or intimate." Kivisto argues that "[t]he actions described, while they may be in bad taste, do not amount to the legal definition of harassment."

¶12 We disagree with Kivisto and conclude that the testimony by the petitioner and her father provides reasonable grounds to believe that Kivisto engaged in a course of conduct that harassed or intimidated the petitioner and served no legitimate purpose, and that he engaged in that conduct with intent to harass or intimidate the petitioner. Although few if any of Kivisto's individual behaviors may have been harassing or intimidating standing alone, we agree with the circuit court that Kivisto's pattern of behaviors that were directed at the petitioner was sufficient to satisfy the statutory standard.

¶13 Kivisto argues that his conduct fails to satisfy the statutory standard because it occurred largely on his own property and because the petitioner could

have ignored him. This argument is not persuasive because Kivisto provides no legal authority to support the argument. Further, the evidence supports a conclusion that it was not reasonable to expect the petitioner to ignore Kivisto's repeated, ongoing conduct.

¶14 Finally, Kivisto appears to make a secondary argument in which he challenges the petitioner's credibility. This argument, too, is not persuasive. The circuit court's decision shows that it credited the petitioner's testimony, and we will not second guess that court's credibility determination. *See Nicholas C.L. v. Julie R.L.*, 2006 WI App 119, ¶23, 293 Wis. 2d 819, 719 N.W.2d 508. If Kivisto means also to challenge the circuit court's factual findings, his challenge fails because he does not demonstrate that any of those findings are clearly erroneous.

¶15 In sum, for the reasons stated above, we conclude that the circuit court did not err when it issued the harassment injunction order against Kivisto.[4]

*By the Court.—*Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] The petitioner's brief includes materials that are not part of the record before us. We have not considered those materials. "We are limited to matters in the record … and will not consider any materials in an appendix [to a brief] that are not in the record." *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

6