IN the MATTER OF the GUARDIANSHIP OF JENAE K. S.:

HOWARD M., Appellant,

v.

JEAN R., Respondent.

Court of Appeals

*No. 94–0955. Submitted on briefs June 13, 1995.—Decided July 6, 1995.*

(Also reported in 539 N.W.2d 104.)

For the appellant the cause was submitted on the briefs of *John H. Short* of *Vance, Wilcox, Short & Ristow, S.C.* of Fort Atkinson.

For the respondent the cause was submitted on the brief of *Leon D. Stenz* of *O'Melia, Schiek & McEldowney, S.C.* of Crandon.

Before Dykman, Sundby, and Vergeront, JJ.

DYKMAN, J.   Howard M. appeals from an order which terminates his guardianship of a child, Jenae K.S., and transfers her to the custody of her mother, Jean R. The first issue is the appropriate standard of review for deciding custody when a guardianship is terminated and a custody contest develops between the child's parent and a third party, in this case, the guardian. The second issue is whether sufficient evidence supported the trial court's finding that there were no compelling circumstances making it appropriate to award custody to a third party, Howard.

We conclude that when a guardianship is terminated, a parent is entitled to custody of a child unless the trial court finds that the parent is unfit or compelling reasons exist for awarding custody to a third party. We also conclude that the evidence was sufficient to support the trial court's finding that no compelling reasons existed for awarding custody of Jenae to Howard. We therefore affirm.

19

## STANDARD OF REVIEW

Though modification of custody determinations are reviewed for an erroneous exercise of discretion, *In re Stephanie R.N.*, 174 Wis. 2d 745, 764-66, 498 N.W.2d 235, 241-42 (1993), this case does not involve a custody dispute between two parents, but between a parent and a third party. Whether a parent is "unfit" or whether "compelling reasons" exist to award custody to a third party is a mixed question of fact and law. We separate mixed questions of fact and law into two components, reviewing disputed issues of material fact under § 805.17(2), STATS.,[1] and reviewing the legal issues *de novo. DOR v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd*, 447 U.S. 207 (1980).

## BACKGROUND

On June 20, 1984, Jean gave birth to a daughter, Jenae. Jean was not married to Jenae's father, and never heard from him or saw him after she told him that she was pregnant. In 1985, Jean moved to Beaver Dam, Wisconsin. She relied upon her sister, Rita, and her sister's partner, Howard, for child care while she worked. Jenae resided with Howard and Rita during the weekdays and on some weekends.

In 1988, Jean and Jenae moved to Crandon, Wisconsin, to live with William R., but after a brief time, Jean returned Jenae to Howard. In 1989, Jean married William. Later that year, Jean petitioned the trial

---

[1] Section 805.17(2), STATS., provides in relevant part:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

court, asking that Howard be appointed Jenae's guardian. She did this because of difficulties Howard was experiencing in obtaining medical attention for Jenae and because Jenae was about to begin school.

The parties agree that Jean and Jenae maintained a relationship during Howard's guardianship although they differ as to the extent and quality of that relationship. Howard provided all of Jenae's financial support although Jean claims that she offered financial help which he refused.

In September 1992, Jean petitioned the trial court, asking that the guardianship be terminated. The court appointed a guardian ad litem, and Jean, Jenae and Howard underwent various psychological evaluations. The court held a hearing on Jean's petition in August 1993 at which Jean, Rita and Jenae testified. The record also contains the reports of several professionals. On March 1, 1994, the court determined that Jean was a fit parent and that no compelling reasons existed to award custody to Howard, a third party. Accordingly, it terminated the guardianship and transferred custody of Jenae to Jean. Howard appeals.

## DECISION

■ Jean relies upon *Barstad v. Frazier*, 118 Wis. 2d 549, 568-69, 348 N.W.2d 479, 489 (1984), to support the trial court's order. In *Barstad*, the supreme court said:

> We conclude that the rule to be followed in custody disputes between parents and third parties is that a parent is entitled to custody of his or her children unless the parent is either unfit or unable to care for the children or there are compelling reasons for awarding custody to a third party. Compelling reasons include abandonment, persis-

21

tent neglect of parental responsibilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child. If the court finds such compelling reasons, it may award custody to a third party if the best interests of the children would be promoted thereby.

(Citation and footnote omitted.)

Howard asserts that *Barstad* involved an initial custody determination, not a reevaluation of custody as is involved in the instant case. He notes that § 767.325(1)(b), STATS.,[2] which governs revisions of legal custody and physical placement orders after two years have passed from the date the initial order was entered, was not enacted when *Barstad* was decided. He also contends that the facts in *Barstad* were much different from the facts of Jenae's guardianship.

---

[2] Section 767.325(1), STATS., provides in relevant part:

[T]he following provisions are applicable to modifications of legal custody and physical placement orders:

. . . .

(b) *After 2-year period.* 1. Except as provided under par. (a) and sub. (2), upon petition, motion or order to show cause by a party, a court may modify an order of legal custody or an order of physical placement where the modification would substantially alter the time a parent may spend with his or her child if the court finds all of the following:

a. The modification is in the best interest of the child.

. . . .

2. With respect to subd. 1., there is a rebuttable presumption that:

a. Continuing the current allocation of decision making under a legal custody order is in the best interest of the child.

b. Continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child.

22

The reason, however, that the *Barstad* court concluded that a parent is entitled to the custody of his or her child absent unfitness or compelling circumstances turned on the constitutionally protected right of a parent to the custody of his or her child. That is why the standard for governmental interference in the relationship is higher than the "best interest of the child" test. The court said:

> While neither this court nor the United States Supreme Court has ever addressed the specific question posed by this case, i.e., what the constitution requires in a custody dispute between a parent and a nonparent third party, a number of relevant principles emerge. On the one hand, "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State." On the other hand, it is evident . . . that the assertion of parental rights is to some extent dependent on the assumption of parental responsibilities, and that the zone of constitutionally protected family autonomy is not defined solely by genetic ties. A biological parent who has never borne any significant responsibility for the child and who has not functioned as a member of the child's family unit is not entitled to the full constitutional protections.

*Barstad*, 118 Wis. 2d at 562-63, 348 N.W.2d at 486 (citations omitted).

The supreme court has recently reaffirmed *Barstad*. In *In re H.S.H.-K.*, 193 Wis. 2d 649, 664-65, 533 N.W.2d 419, 423 (1995), a case involving, in part, a third-party request for custody, the supreme court con-

sidered the trial court's order granting sole custody to the child's parent. The supreme court said:

> A person who is not a biological or adoptive parent may not bring an action to obtain custody of a minor unless the biological or adoptive parent is "unfit or unable to care for the child" or there are compelling reasons for awarding custody to a nonparent.

*Id.*

The constitutional underpinning of *Barstad* is the reason why we reject Howard's assertion that § 767.325(1)(b), STATS., is applicable to guardianship proceedings where the contest is between a parent and a third party. Section 767.325(1)(b) uses a "best interest of the child" test for determining custody between parents. As we have discussed, *Barstad* rejects that test in cases involving third parties in favor of one which makes it more difficult to separate a child from a parent. Were we to conclude that § 767.325(1)(b) provides the proper test for termination of minor guardianship proceedings where the contest is between a parent and a third party, we would then have to conclude that § 767.325(1)(b) is unconstitutional in that setting. We are to interpret statutes so as to avoid a finding of unconstitutionality. *See In re Marcus*, 107 Wis. 2d 560, 570, 320 N.W.2d 806, 812 (1982). Accordingly, we conclude that § 767.325(1)(b), which does not, on its face, apply to guardianship proceedings, is inapplicable in guardianship litigation between a parent and a third party.

While we agree with Howard that a failure to exercise parental responsibilities may result in the forfeiture of constitutional rights to custody or visita-

tion, we disagree that we can decide that issue as he requests, as a matter of law. Howard argues:

> If Jean R. had assumed her parental responsibilities and raised her daughter Jenae as a member of her own household, there is no question that Jean would be permitted to continue to raise Jenae free of government interference. That didn't happen, however. Not only did Jean choose to have Jenae raised by Howard, but Jean herself invoked government "interference" by petitioning the Dodge County Circuit Court to appoint Howard as Jenae's guardian.

This is not an argument about the standard applicable for reviewing the instant case. It is an assertion that the facts of the case require a result different from that reached by the trial court. Howard does not challenge the court's finding that Jean is a fit parent. He claims, however, that there are compelling reasons to deny custody to Jean.

The trial court found that there were no compelling reasons to continue Jenae's custody with Howard. We may not upset the factual component of that finding unless it is clearly erroneous. Section 805.17(2), STATS. Howard's brief recounts in detail the evidence of Jean's inadequacies. However, evidence which would support a finding contrary to that made by the trial court does not mandate reversal. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249, 274 N.W.2d 647, 650 (1979).

The record contains evidence that Jean maintained an interest in Jenae, though hampered by the demands of being a working single parent without a high school education. She worked a second shift which ended at 1:00 a.m. She agreed to the guardianship so

that Jenae could get medical care and be enrolled in school. For a time, Jean was hospitalized with a form of diabetes and she was in a severe car accident. When she moved to Crandon, she encountered financial problems. She had meager savings and there was minimal employment there. She sent Jenae back to Howard because she felt that it was best for Jenae at the time. She maintained as much contact with Jenae as she could, but Howard did a lot of traveling. She telephoned many times, but often was unable to reach Howard or he had other plans. She asked Howard to bring Jenae to Crandon to visit, but he refused. She continued to offer money to help raise Jenae but Howard always refused. Jean left cards and gifts for Jenae at her parents' house when she couldn't see Jenae. She would travel to Beaver Dam about every month, though she tried to see Jenae more often. Jean telephones Jenae once a week.

Jenae is not afraid to get close to Jean when they are alone together, but Jenae is afraid to show her love to Jean when Howard is present. Consequently, Jean and Jenae worked out a code so that Jenae could tell Jean that she loved her when Howard was present. When Jenae was interviewed by a psychologist in October 1992, she showed the psychologist a message on a chalk board reading: "Dear Dr. Gina, I really want to live with my mom." After the psychologist read the message, Jenae insisted on erasing it.

█

The facts of record from which the trial court concluded that there were no compelling circumstances to deny Jean custody of Jenae differ from the facts Howard has stressed in his brief. After hearing the evidence, the court might have concluded that Jean was the parent Howard asserts her to be. But it did not.

26

The evidence we have recited permitted the court to conclude, as it did, that there were no compelling circumstances which would permit it to award custody to Howard, a third party. And, our standard of review does not permit us to second guess the inferences drawn by the court. Once we accept those inferences, the conclusion that Howard has not met the *Barstad* test follows. We therefore affirm.

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). Fortuitously, the Wisconsin Supreme Court has very recently cut the Gordian knot which has tied the hands of trial courts in resolving custody and physical placement disputes between biological parents and persons who have established a parent-relationship with a child. *See In re H.S.H.-K.*, 193 Wis. 2d 649, 533 N.W.2d 419 (1995). The court decided that in this same-sex marriage, the biological mother had "exercised her constitutional rights to include another adult to act as a parent." *Id.* at 694, 533 N.W.2d at 435. The court concluded that when the biological parent has permitted another adult to establish a parent-like relationship with his or her child, the court may exercise its equitable powers to protect the child's best interest by preserving the child's relationship with that adult.

> This exercise of equitable power protects parental autonomy and constitutional rights by requiring that the parent-like relationship develop only with the consent and assistance of the biological or adoptive parent. It also protects a child's best interest by preserving the child's relationship with an adult who has been like a parent.

*Id.* at 696, 533 N.W.2d at 436.

27

Here, when the biological mother, Jean R., petitioned the court to appoint Howard M. guardian of her child, Jenae K.S., she exercised her constitutional right to include Howard to act as Jenae's parent. *Barstad v. Frazier*, 118 Wis. 2d 549, 348 N.W.2d 479 (1984), upon which the majority relies, does not apply where the parent-like relationship between a third party and the child developed with the consent and assistance of the biological parent. In this case, as in *H.S.H.-K.*, the biological mother exercised her constitutional right to include another adult to act as a parent when she petitioned the circuit court to appoint Howard guardian of Jenae.

In her petition to establish a guardianship over Jenae, Jean stated that Jenae was in need of a guardian for the following reasons: "The ward is a minor. I desire for the benefit of my child that my child be permitted to reside at this time with Howard [M.] . . . and it is necessary for him to be appointed legal guardian so he can properly care for my child at this time." In its order appointing Howard as Jenae's guardian, entered September 12, 1989, the court found that Jenae was "a proper subject for guardianship" and Howard was "a competent and suitable person" to be appointed guardian of the person and estate of Jenae. The mother does not challenge these findings.

On September 14, 1992, the mother filed a petition for termination of Howard's guardianship of Jenae pursuant to § 880.08(4), STATS., which provides: "Notice of a rehearing to determine if a ward is a proper subject to continue under guardianship shall be given as required for the appointment of a guardian." The legislature's use of the word "rehearing" is unusual if the legislature intended to include in its meaning a proceeding to terminate a guardianship. "Rehearing" ordinarily refers

to "a second or new hearing . . . by the same tribunal . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1914 (1976). BLACK defines "rehearing" as the "[s]econd consideration of cause for [the] purpose of calling to court's or administrative board's attention any error, omission, or oversight in first consideration." BLACK'S LAW DICTIONARY 1287 (6th ed. 1990).

A "rehearing" usually follows close upon a decision entered after a hearing. A person who seeks a rehearing generally considers that the tribunal has reached the wrong result and seeks to correct the order or action of the tribunal. *See* § 227.49, STATS. ("Any person aggrieved by a final order may, within 20 days after service of the order, file a written petition for rehearing which shall specify in detail the grounds for the relief sought and supporting authorities."). The intention of the legislature in enacting § 880.08(4), STATS., is unclear; however, because there is no other procedure in ch. 880, STATS., to terminate a guardianship, it must have intended that the court could act under § 880.08(4). A guardian may be removed under § 880.16(1) and (2), STATS., without terminating the guardianship, but only for cause or by a minor ward who has reached the age of fourteen years. Jenae is now eleven years old. She will shortly be able to make her own decision as to whom she wishes as her guardian or whether she wishes the guardianship ended. Section 880.26, STATS., prescribes when a guardianship of the person shall terminate but does not include the circumstance where an interested person believes that the guardianship is no longer necessary and should be terminated. A guardian may be removed for the reasons stated in § 880.251, STATS., none of which apply here.

29

I conclude that the mother's attempt to terminate the guardianship of her daughter may be considered by the court under § 880.08(4), STATS. However, the circuit court must determine whether Jenae is "a proper subject" to continue under guardianship. A rehearing does not include a redetermination as to whether the guardian is "a proper guardian." *See* § 880.09, STATS. Thus, the circuit court is not required to substitute for the guardian a parent who is "suitable and willing" to act as the child's guardian.

Section 880.09(2), STATS., provides in part: "If one or both of the parents of a minor . . . are suitable and willing, the court shall appoint one or both of them as guardian unless the proposed ward objects." Jenae testified she did not want to live with her mother in Crandon, and that if she had to go there to live, she would run away. She also testified that she loved her "father" very much and wanted to stay with him. "[T]here is no way I am going to go live with her. I am too scared of her after she spanked me black and blue and left me in the bedroom just because I didn't eat." According to the report of Gina Koeppl, Ph.D., who evaluated Jenae, Jenae stated that she was happy in both settings and finds it hard to decide with whom she wishes to live. Dr. Koeppl reported that "Dad" put pressure on Jenae to say that she wished to live with him. At the beginning of the hearing on August 4, 1993, Jenae handed the judge a note which read: "About my dad[:] My dad is a kind loving man. He is not [cruel] like my mom. My dad never spank me. We always ta[l]k things out. I love him and I'll never leave him."

Child Protective Services filed a home study with the court. The worker reported that Jean had given birth to two other non-marital children that she gave up for adoption. In March 1988, the mother moved to

Crandon to live with William R. Jenae lived with them at this time. However, in May 1988, Jenae stated that she wanted to go back to live with Howard and Rita M. The mother felt she needed to explore her relationship with William R. so she encouraged Jenae's decision.

The mother married William October 28, 1989. The mother and William have been involved in Alcoholics Anonymous for eight years. William wishes to adopt Jenae. The mother informed the psychologist that Jenae was excited about having "two grandmas" and "two grandpas." The worker concluded that the mother and William R. "appear to be loving and concerned 'parents.' "

Psychiatric Associates of Beaver Dam made a clinical examination of Jenae on November 10, 1992. The social worker found that Jenae would not benefit from a change of physical custody at this time. However, Jenae's mood was positive but with some mixed feelings respecting her mother's attempt to seek custody. She expressed her concerns "protective of her father and home." The worker concluded:

> It would seem more constructive for Jenae to continue to see her mother on a regular basis increasing the length of visits if all goes well. Jenae indicated that she would like to see her mother more often.

The social worker supported a slow reintegration process consistent with Jenae's protective feelings as to her "dad." Dr. Koeppl supported Jenae's return to her mother as soon as deemed feasible by the therapist and the guardian ad litem. She agreed with Dr. Sionag Black's recommendation that Jenae be gradually reunified with her mother.

31

The trial court made no determination as to the credibility of the witnesses and, therefore, did not determine Jenae's wishes. The court felt bound to apply the *Barstad v. Frazier* standard. The court found that the mother was a fit parent and was entitled to custody of Jenae in the absence of compelling reasons for continuing the guardianship. The court, therefore, ordered that Jenae be informed immediately that the court had terminated the guardianship so that Jenae could make an adjustment to the transfer of custody to her mother. Because the standard the trial court should have applied was Jenae's best interest, the trial court erred in terminating the guardianship and awarding custody to Jenae's mother.

*H.S.H.-K.* confirms the opinion I expressed in my dissent to the certification of this case to the supreme court. I call particular attention to my discussion of *In re Guardianship of Schmidt*, 71 Wis. 2d 317, 237 N.W.2d 919 (1976). In *Schmidt*, the court first considered what standard governed its decision to choose as guardian the deceased mother's sister-in-law or the maternal grandparents. The court held:

> The trial court aptly noted that the hearing was directed to a choice of a guardian; it was not a divorce custody or adoption hearing. Sec. 880.09, Stats., provides that in selecting a guardian:
>
> > The court shall consider nominations made by any interested person and, in its discretion, shall appoint a proper guardian, having due regard for the following:
> >
> > . . . .

The relevant factors include a preference for a minor's parent to be the guardian if "suitable and willing," . . . .

Both parties appear to accept the standard of "the best interest of the child" as controlling here. *We think the conclusion is inescapable that the best interests test be followed.* Nothing in the guardianship section indicates otherwise, although preference is given to certain nominations. This test, however, does not consist of concentration solely on the objective factors to the exclusion of the rights, legal or moral, of parents. *See* sec. 48.01(3), Stats., cited in *Adoption of Randolph* (1975), 68 Wis. 2d 64, 77, 227 N.W.2d 634. It must be considered in the balance, as the child's best interest may direct that a relationship be allowed between the child and the natural parent or other close relative that is known to him.

*Id.* at 327-28, 237 N.W.2d at 924 (emphasis added).

Where the natural parent voluntarily petitions to name a guardian for his or her child, the custody change from the parent to a third party is not only consented to but advocated by the parent. That parent cannot expect that his or her constitutionally protected parental rights may be enforced with the same vigor as in the case of a dispute between the natural parent and a third party who seeks to usurp the parent's rights. Those rights, however, must be balanced in determining the child's best interest. *Schmidt*, 71 Wis. 2d at 328, 237 N.W.2d at 924-25.

*H.S.H.-K.* clarifies that one of a biological parent's constitutionally protected rights is the right to "allow another adult to develop a parent-like relationship with the child." 193 Wis. 2d at 695 n.40, 533 N.W.2d at 436. The court stated that "on the basis of the record before us, a circuit court could find that Knott [the

33

biological parent] had consented to and fostered Holtz-man's formation and establishment of a parent-like relationship with the child, *thereby sharing her parental rights." Id.* (emphasis added).

We must reverse the judgment of the trial court. For the sake of all the parties, but especially Jenae's, we should conclude as a matter of law that Jenae's best interests would not be served by terminating the guardianship. A remand to the trial court will keep Jenae's status unsettled. We have previously noted that "[a] child's time is not an adult's time." *In re R.H.*, 147 Wis. 2d 22, 37, 433 N.W.2d 16, 22 (Ct. App. 1988) (quoting J.R. Milligan & E. Loth, *Permanency Planning for Children (A New Ballgame in Appellate Courts)*, 4 APPELLATE COURT ADMINISTRATION REV. 37, 38 (1982-83)), *aff'd*, 150 Wis. 2d 432, 441 N.W.2d 233 (1989). "[To] avoid irreparable psychological injury, placement, whenever in dispute, must be treated as the emergency that it is for the child." *Id.* (quoting J. GOLD-STEIN ET AL., BEYOND THE BEST INTERESTS OF THE CHILD 43 (1973)).

When the mother petitioned the circuit court to appoint Howard guardian of Jenae, she represented to the court that she sought the guardianship. I believe we can conclude as a matter of law that the mother has not shown that Jenae is not "a proper subject" to continue under guardianship; nor has she shown that Howard is not "a proper guardian" for Jenae. The mother seeks to terminate the guardianship simply because she now feels strong enough to re-establish a parental relationship with her daughter. I agree with Psychiatric Associates that that process should be slow and should consider Jenae's wish to protect Howard.

The equitable power which the *H.S.H.-K.* court has held a trial court may exercise to protect parental

34

autonomy and the constitutional rights of biological parents permits the trial court to continue Howard's guardianship upon conditions which advance Jenae's best interests.

As long as the guardianship continues, Howard will have "care, custody and control" of Jenae. *See* § 880.01(3), STATS. The trial court is free, however, to exercise its equitable powers to ensure that Jenae's mother will have ample opportunity to develop her relationship with Jenae. Howard is seventy-five and may shortly welcome the mother's help in raising Jenae.

For some time, the legislature and the courts pursued policies which tended to limit the child's family. Perhaps that trend can now be reversed if the equitable powers announced in *H.S.H.-K.* are exercised by trial courts to provide the child with as extended a family as may be consistent with the child's best interest. Biological parents and persons having a parent-like relationship with a child should cooperate so that the child is not forced to make "Sophie's choice."