**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 3, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP330**

Cir. Ct. No. 2019JG465

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

IN THE INTEREST OF J.L., A PERSON UNDER THE AGE OF 18:

S.C.,

PETITIONER-APPELLANT,

V.

D.L.,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: KASHOUA KRISTY YANG, Judge. *Reversed and remanded for further proceedings*.

Before Brash, C.J., Donald, P.J., and White, J.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. Stephanie,[1] *pro se*, appeals the order granting guardianship of her granddaughter, Jasmine, to Danielle, a non-relative. Stephanie argues that the circuit court erred when it granted the guardianship after it only considered the best interest of the child and failed to make the prerequisite finding that Jasmine's mother, Tamara, was an unfit parent, in contravention of Wisconsin law. Upon review, we agree that the circuit court erroneously exercised its discretion in granting the guardianship order without determining Tamara's fitness. Accordingly, we reverse the order granting guardianship to Danielle and remand for further proceedings.

## BACKGROUND

¶2 Jasmine was born to Tamara in May 2015.[2] On September 16, 2019, Danielle filed a petition for permanent guardianship of Jasmine, stating she was a family friend with a "like-kin" relationship. In Danielle's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) affidavit, she attested that Jasmine had lived with Danielle at her current Milwaukee address since November 25, 2016. Further, she stated that Jasmine had lived with Tamara from birth until November 25, 2016. In the accompanying Minor Guardianship Questionnaire, Tamara was listed as Jasmine's mother and Danielle claimed she was Jasmine's

---

[1] Because the guardianship proceedings are confidential, we refer to all parties by pseudonyms. *See* WIS. STAT. § 809.19(1)(g) (2019-20). Appellant S.C. will be referred to as Stephanie. Respondent D.L. will be referred to as Danielle. The child at issue, J.L. will be referred to as Jasmine and her mother, T.C., as Tamara.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The record is unclear about whether a paternity adjudication for Jasmine has occurred. Nevertheless, the father's rights are not at issue in this appeal and we discuss him no further.

grandmother. Danielle stated that she provided child care for Jasmine since she was two months old; further, she stated that Tamara had been incarcerated and her current address was unknown. A guardian *ad litem* (GAL) was appointed September 19, 2019. The trial court[3] granted a temporary sixty-day guardianship of Jasmine to Danielle on October 10, 2019.[4]

¶3      The circuit court conducted the contested guardianship hearing on December 10, 2019. The GAL informed the court that a social worker had observed and interviewed Jasmine at Danielle's home. The GAL stated that at the October 10, 2019 temporary guardianship hearing, Tamara informed the trial court she wanted Jasmine placed with her mother, Stephanie. As a result, the GAL argued that because Tamara did not wish to assume parental responsibility of Jasmine, the circuit court did not need to determine Tamara's fitness as a parent, but only needed to determine the best interest of Jasmine in appointing a guardian. The court then asked Tamara whether she was recommending Jasmine be placed with her mother, Stephanie. Tamara agreed, stating, "absolutely." The circuit court then concluded "that the best interest standard applies and not fitness or unfitness."

¶4      The GAL called as a witness Marcy Wichman, a social worker employed by the Legal Aid Society Guardian *ad Litem* division. Wichman

---

[3] The Honorable Dennis Flynn signed the temporary guardianship order. We refer to Judge Flynn as the trial court. The Honorable Kashoua Kristy Yang presided over the contested guardianship hearing and entered the permanent guardianship order. We refer to Judge Yang as the circuit court.

[4] We note that a transcript of the October 10, 2019 temporary guardianship hearing was not included in the record. *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("An appellate court's review is confined to those parts of the record made available to it.").

testified that she interviewed Danielle, who told her that Tamara asked Danielle to watch Jasmine when she was a couple of months old. Based on the social worker's home visit, Wichman stated that Danielle lived in a "little, cozy single family home. It had three bedrooms. It was well furnished." Danielle lived there with her school-aged son and Jasmine. She stated that Danielle told her that Tamara had seen Jasmine four or five times during the time Jasmine lived with her.

¶5    Wichman testified that she spoke with Stephanie on the telephone. She asked Stephanie why she wanted Jasmine now, to which she reported Stephanie said that Jasmine "was her granddaughter, and [she] would like to have her with her [siblings]." The social worker stated that Stephanie reported seeing Jasmine on most weekends, an arrangement worked out between the families. Wichman testified, "I will qualify this by saying that from my conversation with the maternal grandma, she did seem like an appropriate person. Just the length of time that [Jasmine] was with [Danielle] is, you know, more important to me at this point." Wichman stated that Jasmine was well bonded with Danielle. The social worker thought that Danielle seemed focused on allowing Jasmine to have a continued relationship with her siblings and grandmother. But the social worker thought that Stephanie would not keep Jasmine in touch with Danielle.

¶6    Danielle then testified in support of the petition. She stated that Tamara and Jasmine first came around with Danielle's stepson in 2015. Jasmine and Tamara came to live with Danielle in 2015, and then both Tamara and Jasmine moved out six or seven months later. Tamara was arrested in November 2016 and Jasmine came to live with Danielle again. She stated that she bonded with Tamara, but when Tamara got out of jail in 2018, she was an entirely different person. She testified that Tamara has been over to see Jasmine four or

five times since 2018. Danielle stated that Stephanie and Tamara agreed that she should care for Jasmine. Danielle stated that she got along with Tamara and Stephanie and had regular contact until August 2019, when Tamara accused Danielle of "lying and everything." She testified that Jasmine shares a bedroom with Danielle's nine-year-old son. She stated that Jasmine called her "granny". Danielle stated that she would not deny Jasmine's biological family from having contact with her.

¶7 Tamara testified in her own accord. "Like I said, I haven't been the best person or the best mother. I'm not trying here to make it seem like I'm perfect." She stated that she saw Jasmine "all the time" and that "she ain't look the best" when she saw her. She testified that she appreciated Danielle's help, but that Jasmine needs to be with Stephanie and her siblings. She stated that she would not stop Jasmine from seeing Danielle, but she did not think it was best for her daughter to live there. While the bond between Danielle and Jasmine was wonderful, Danielle was "not our blood." She did not want to lose her child to a stranger. Stephanie was not called to testify.

¶8 The court stated that the question was "what's in the child's best interest." The court made the following findings of fact:

> [Danielle] has known the child since the child was about two months old.
>
> And from on or about the time that [Tamara] was incarcerated to the present, she has had the primary care and responsibility of the minor child, and that totaling about three-and-a-half years.
>
> During that time the child's whereabouts and needs were not unknown to [Tamara] or to maternal grandmother, [Stephanie].
>
> As a matter of fact, [Stephanie] has had contact with the minor child, and the minor child has also had contact, at

least on somewhat of an ongoing basis in an informal arrangement between maternal grandmother, siblings, and [Danielle].

And so the role of a guardian is such that the guardian gets to make legal decisions, to make decisions affecting the child, such as education and health.

But the legal guardian does not have the right to prevent the mother, in this case [Tamara] from seeing the child.

But the legal guardian, a proposed legal guardian, would have the right or ability to set boundaries or rules that will keep the child safe and will keep the contacts reasonable.

And through testimony by [Danielle] and also through [Tamara's] own admission, the kind of behavior that [Danielle] has engaged in, in providing care for the child that she would continue to do that.

And maybe even in light of how hostile this can become … [Danielle] as a proposed guardian wouldn't have the right to prevent [Tamara] from seeing her child, [Tamara's] child.

The primary care responsibility for this past three-and-a-half years has been borne by [Danielle]. It's from testimony which I find to be credible on [Danielle's] end that there is a bonded relationship between [Danielle] and the child; therefore, the petition for guardianship is granted.

The circuit court ordered the appointment of Danielle as legal guardian.

¶9    Tamara disrupted the proceedings at this point. The court, stated that "[t]he record should reflect that [Tamara] knocked down the chair, slammed the table, and stormed out of the courtroom, and she was followed by the two bailiffs who were present during the hearing."

6

¶10　After Danielle was appointed Jasmine's guardian, Stephanie filed notice to appeal the order as well as multiple petitions challenging the guardianship appointment and a motion for visitation.[5]　All were denied and the final petition appears to have been ignored by the circuit court.　Stephanie also made multiple requests for court records in two juvenile guardianship cases pertaining to Jasmine; however, the court denied those requests without a hearing.　Stephanie also moved this court to terminate the guardianship and to open or correct court records; however, we denied her motions because her requests should have been directed to the circuit court.

¶11　We note that Stephanie appeals, but while Tamara contested the guardianship before the circuit court, she is not a party to this appeal.　Danielle filed a letter in January 2021 affirming her belief that the circuit court's decision was correct.　In an April 2021 order, we construed her letter as a statement that she will not file a separate brief because her "interests are adequately represented in another respondent's brief"—that of the guardian *ad litem*, who has taken the position of a respondent."　*See* WIS. STAT. RULE 809.19(3)(a)3., (8m).

---

[5] Stephanie filed a petition for her appointment as successor guardian on December 23, 2019, which the court denied at a hearing on January 13, 2020.　Stephanie filed a petition for review of the guardian's conduct on January 21, 2020.　Stephanie stated that after having no conflict with Danielle, she now had no way to see Jasmine and that she had not seen Jasmine since January 1, 2020.　The circuit court dismissed the petition with prejudice on February 12, 2020, and imposed costs and fees of $250 because the court considered the action frivolous. Stephanie filed a motion for visitation on March 4, 2020, alleging that Danielle has refused to allow visitation with Jasmine since January 1, 2020, and has refused calls and texts from Jasmine's family.　The court denied the visitation motion for being brought under the wrong statute, WIS. STAT. § 54.56, which only applies when the parent is deceased.　Stephanie filed a petition to reverse or terminate the guardianship on July 2, 2020.　A hearing was scheduled for July 20, 2020; however, correspondence from Stephanie suggests that the circuit court cancelled the hearing.　On July 13, 2020, Stephanie filed a motion to show cause and to change legal custody and physical placement.　The circuit court did not respond to this motion and did not issue orders.

## DISCUSSION

¶12    This case arises out of a private guardianship action sought by a family friend and contested by the child's maternal grandmother. As a threshold matter, the GAL argues that Stephanie does not have standing to appeal the guardianship order. "The right to appeal is limited to parties aggrieved in some appreciable manner by the judgment." *Koller v. Liberty Mut. Ins. Co.*, 190 Wis. 2d 263, 266, 526 N.W.2d 799 (Ct. App. 1994). "We must liberally construe the law of standing." *Polk Cnty. v. State Public Defender*, 179 Wis. 2d 312, 316, 507 N.W.2d 576 (Ct. App. 1993), *aff'd*, 188 Wis. 2d 665, 524 N.W.2d 389 (1994). "A party has standing when its claims are no more than a 'trifle.'" *Carla S. v Frank B.*, 2001 WI App 97, ¶5, 242 Wis. 2d 605, 626 N.W.2d 330 (citation omitted). Under a previous version of the guardianship statute, we concluded that "an interested party had standing to appeal from a decision granting or denying a guardianship." *Id.*, ¶7.[6]

---

[6] We considered standing for "an interested party" to appeal in *Carla S. v Frank B.*, 2001 WI App 97, ¶¶5, 7, 242 Wis. 2d 605, 626 N.W.2d 330 under WIS. STAT. § 880.08 (1999-2000), which governed notice of guardianship hearings and has since been repealed and replaced. *See* 2005 Wis. Act 387; 2007 Wis. Act 45. WISCONSIN STAT. § 54.38 (2017-18), in effect at the time of the filing of Danielle's petition, governed notice for guardianship hearings and required that notice be provided to "[a]ny other interested persons." Sec. 54.38(2)(b)4. (2017-18). While the guardianship statutes have been reconfigured, revised, and renumbered numerous times, we see no reasoning that would disturb the standing of an interested person to appeal. When lawmakers revise a statute but retain words or phrases that have been previously judicially interpreted, we presume that the legislature intended the words to have the same meaning in the revised statute. *Estate of Miller v. Storey*, 2017 WI 99, ¶¶51-52, 378 Wis. 2d 358, 903 N.W.2d 759 ("This doctrine of legislative acquiescence applies with equal, if not greater, force where the legislature has acted on the statute, but declines to revise the interpreted language.").

¶13 We conclude that Stephanie's standing arises out of her status as an interested person in the original petition.[7] For the purposes of a petition for guardianship, an interested person includes "[a]ny individual who is nominated as guardian[.]" WIS. STAT. § 54.01(17)(a)4 (2017-18). The record reflects that Tamara wanted Stephanie to serve as Jasmine's successor guardian. She made this request multiple times to the circuit court.[8] Therefore, we consider Stephanie an "interested person" in the guardianship action and that she was "aggrieved in some appreciable manner" during that process, which gives her standing to appeal. *See Koller*, 190 Wis. 2d at 266.

¶14 We now turn to the issues on appeal. Stephanie argues that the circuit court granted guardianship of Jasmine without applying the proper standard of law set forth in *Barstad v. Frazier*, 118 Wis. 2d 549, 568-69, 348 N.W.2d 479 (1984). Therefore, she argues that the circuit court erroneously exercised its discretion when it granted guardianship of Jasmine to Danielle. Additionally, Stephanie asserts that when a circuit court finds that a parent is unable to adequately care for a child, the child custody statute requires the child to be placed

---

[7] We note that Danielle filed this petition in August 2019, when guardianships of the person or estate of a minor or adult were all generally governed by WIS. STAT. ch. 54 (2017-18). Chapter 54 minor guardianships did not require involvement by the child welfare system and were informally referred to as private guardianships. With an effective date of August 1, 2020, the Legislature enacted 2019 Wis. Act 109, which created a new statute governing guardianships of minors in WIS. STAT. § 48.9795. Minor guardianships were previously revised under the law in 2005 and 2007, when they were moved from WIS. STAT. ch. 880 to ch. 54. *See* 2007 Wis. Act 45; 2005 Wis Act 387.

[8] That Tamara's nomination was informally before the court does not negate its status as nomination. Further, this court has not strictly construed nomination in guardianship. *See Anna S. v Diana M.*, 2004 WI App 45, ¶5, 270 Wis. 2d 411, 678 N.W.2d 285 (concluding that a deceased father "effectively nominated" his widow as guardian of his non-marital child by his conduct before death, which appeared to be living with his wife and child without any formal legal action).

9

with relatives or a county child welfare agency. *See* WIS. STAT. § 767.41(3)(a). Finally, she argues that the court and GAL showed bias against Tamara and Stephanie.[9]

### I. Proper legal standard in guardianship contests

¶15    A custody determination presents a mixed question of fact and law. ***Cynthia H. v. Joshua O.***, 2009 WI App 176, ¶33, 322 Wis. 2d 615, 777 N.W.2d 664. "A custody award will be upset only if the appellate court is convinced that the findings of fact upon which the custody determination is based are clearly erroneous … or that the custody determination represents" an erroneous exercise of discretion. ***Barstad***, 118 Wis. 2d at 554 (citation omitted). "We give deference to the circuit court's factual findings unless clearly erroneous." ***Robin K. v. Lamanda M.***, 2006 WI 68, ¶12, 291 Wis. 2d 333, 718 N.W.2d 38. "We affirm discretionary decisions if the circuit court applies the proper legal standard to the relevant facts and uses a rational process to reach a reasonable result." *See **Anna S. v Diana M.***, 2004 WI App 45, ¶7, 270 Wis. 2d 411, 678 N.W.2d 285. "Whether the circuit court applied the correct legal standard in exercising its discretion presents a question of law, which we review" independently. ***Id.***

¶16    Here, the circuit court concluded that it could move directly to the best interest of the child determination without addressing Tamara's fitness or compelling reasons for the custodial change. This is the wrong standard of law. Under Wisconsin law as it relates to "custody disputes between parents and third

---

[9] We decline to address Stephanie's argument that the circuit court and the GAL manifested bias in their actions to decide this petition. Stephanie does not develop a legal argument to support this claim and we will not develop it for her. *See **Pettit***, 171 Wis. 2d at 646 (explaining that we may decline to review arguments not reflecting legal argument).

parties[,]" the rule is that "parents have a preeminent right to the custody of their children absent a finding of unfitness, inability or compelling reasons due to dissolution of the parent-child relationship or dereliction of parental responsibilities." *Barstad*, 118 Wis. 2d at 565, 568-69. Only if the circuit court finds that the parent is unfit or that compelling reasons exist may the court then consider whether it is in the best interest of the child to grant custody to a third party.[10] *Id.* at 569.

¶17 The GAL concedes that the circuit court did not consider Tamara's fitness and that *Barstad* is controlling as the "seminal case addressing the law on guardianship transfers." Although *Barstad* involved a grandmother seeking custody of her grandson under WIS. STAT. ch. 767 over the objection of her daughter, the child's mother, *Barstad*, 118 Wis. 2d. at 554, it has also been applied numerous times to guardianship actions. *See e.g.*, *Nicholas C.L. v. Julie R.L.*, 2006 WI App 119, ¶15, 293 Wis. 2d 819, 719 N.W.2d 508 (applying *Barstad* to a guardianship challenge by paternal grandparents in opposition to the child's natural mother); *Howard M. v. Jean R.*, 196 Wis. 2d 16, 20-21, 539 N.W.2d 104 (Ct. App. 1995) (applying *Barstad* to a non-relative caretaker's guardianship petition contested by the child's natural mother).

---

[10] Although the list of compelling reasons is not exhaustive, the *Barstad* court stated that "[c]ompelling reasons include abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child." *Barstad v. Frazier*, 118 Wis. 2d 549, 568, 348 N.W.2d 479 (1984).

¶18    Nevertheless, the GAL contends that the reviewing court may search the record to support the circuit court's unstated finding that Tamara was unfit.[11] A reviewing court searches the record for reasons to sustain the circuit court's exercise of discretion. *See Keller v. Keller*, 2002 WI App 161, ¶6, 256 Wis. 2d 401, 647 N.W.2d 426. However, the record before us is limited and does not indicate that the circuit court made sufficient findings to show that Tamara was unfit.[12] After the court concluded that Tamara's fitness or unfitness was not at issue, the record of Tamara's fitness is entirely undeveloped. Therefore, we conclude there are no factual findings to which this court could defer.

¶19    In *Barstad*, our supreme court concluded that the "best interest of the child" is not the proper standard in custody disputes between a natural parent and a third party. *Id.*, 118 Wis. 2d at 556-67. It concluded "that in the absence of compelling reasons[,] the principles followed in cases involving termination of parental rights should be followed where a request for a custody change from a parent to a third party is presented to a court." *Id.* at 556.

---

[11] Because the GAL concedes that *Barstad* is the appropriate legal standard, we review this case under the rule set forth there. We acknowledge that this court has previously concluded that *Barstad* did not apply to constitutional questions with regard to "the rights of a parent who is not seeking custody of the child and who is not able to have custody or provide for the child's care." *Anna S.*, 270 Wis. 2d 411, ¶17. However, we distinguish that in *Anna S.*, the mother argued that her preference in nomination of a guardian should control as a constitutional right, and here, Stephanie, does not make a constitutional argument.

[12] Our review shows that Tamara was incarcerated for a period of time and that she was not living with Jasmine for some time. However, incarceration does not equate to unfitness. *See Kenosha Cnty. DHS v. Jodie W.*, 2006 WI 93, ¶49, 293 Wis. 2d 530, 716 N.W.2d 845 (concluding "that a parent's incarceration does not, in itself, demonstrate that the individual is an unfit parent"). While Tamara's presence or absence from Jasmine's life was disputed, absence or living separately does not make a parent automatically unfit. *See e.g., Barstad*, 118 Wis. 2d at 553, 569; *Howard M. v. Jean R.*, 196 Wis. 2d 16, 20, 539 N.W.2d 104 (Ct. App. 1995); *Robin K.*, 291 Wis. 2d 333, ¶¶5, 8. Although abandonment may give rise to a compelling reason, the circuit court did not make that factual finding.

¶20 In addition to not addressing the fitness of Tamara as a parent, the circuit court's determination of "best interest" is not based on any stated standard of law and the court did not demonstrate a rational process. *Barstad* directs us to the standards for termination of parental rights (TPR)—actions that are governed by WIS. STAT. § 48.426. The circuit court did not address the factors which a circuit court must consider when contemplating a TPR. Alternately, it did not consider the factors under the best interest determination for custody under WIS. STAT. § 767.41. Our supreme court has also considered relevant factors for a minor guardianship to include "a preference for a minor's parent to be the guardian if 'suitable and willing,' otherwise the court could consider a selection by the minor if the child is over fourteen years of age or could select a guardian nominated in the will of a deceased parent." *Brezinski v. Barkholtz*, 71 Wis. 2d 317, 327, 237 N.W.2d 919 (1976). Our supreme court further considered housing, financial, relations with the children, separation trauma, and age as factors. *Id.* at 329-30.

¶21 When we consider what factual findings the circuit court made—ignoring the unaddressed fitness findings—we do not see the court following any of the factors contemplated in the case law for best interest of the child. It did not consider the factors for best interest of the child during a TPR or the best interest factors for custody and physical placement. The circuit court's reasoning simply did not address the requirements for finding a parent unfit and for the termination of parental rights, nor did it demonstrate a rational process based on the relevant facts and proper standards of law to determine the best interest of Jasmine to require the appointment of a guardian. Without the reasoning for its decision, we are unable to conclude the court's decision was reasonable. Therefore, we

13

conclude that the circuit court's order granting guardianship to Danielle was an erroneous exercise of discretion.

## II.     The impact of WIS. STAT. ch. 767

¶22     Stephanie argues that in a custody challenge, if the parent is unable to care for the child, then the statutes require the court transfer custody to a relative, a county department or a licensed child welfare agency or a county's department of children and families.  *See* WIS. STAT. § 767.41(3)(a).[13]

¶23     The interpretation of a statute is a question of law, which we review independently.  *See Cynthia H.*, 322 Wis. 2d 615, ¶33.  We begin with the language of the statute and if the meaning is plain, then our inquiry ordinarily stops.  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis .2d 633, 681 N.W.2d 110.  Because context and structure are important, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  *Id.*, ¶46.

¶24     WISCONSIN STAT. § 767.41(3)(a) provides guidance for the circuit court to determine custody of children when their parents are unfit or unable to care for them.  From its plain meaning, the court may determine that is in the best

---

[13] We note that Stephanie's argument is based on the child custody statute referenced in *Barstad*:  WIS. STAT. § 767.24(1)(c) (1983-84).  Although substantially similar, that statute was restated in 1987 Wis. Act 355, by adding a requirement that if custody is transferred to a third-party the court, in its order, must notify the parents of any grounds for termination of parental rights which may be applicable.  In 2005 Wis. Act 443, the statute was renumbered to its current position at WIS. STAT. § 767.41(3).  Further, the "best interest" factors referenced in *Barstad* at WIS. STAT. § 767.24(2) were renumbered and expanded in 1987 Wis. Act 344 to § 767.24(5).  In 2005 Wis Act 443, the best interest factors were renumbered to § 767.41(5)(am).

interest of a child to declare that child in need of protection and then transfer custody to a relative or a county or child welfare agency. Considering the child custody statute in context, § 767.41(1) provides that "the question of a child's custody may be determined as an incident of any action affecting the family or in an independent action for custody." WISCONSIN STAT. § 767.001(1)(e) provides that "[a]ction affecting the family" includes "[c]ustody." Custody is not defined independently in the definitions in chapter 767; however "[l]egal custody" is defined as "the right and responsibility to make major decisions concerning the child, except with respect to specified decisions as set forth by the court or the parties in the final judgment or order." Sec. 767.001(2). The guardianship statute in effect when this petition was granted does not define custody, although there are references within the statute to the person having care and custody over a minor ward. *See e.g.* WIS. STAT. § 54.25(2)(d)1. ("When a court appoints a guardian for a minor, the guardian shall be granted care, custody, and control of the person of the minor."). Danielle's guardianship petition was an action that affected custody of Jasmine.

¶25     The GAL did not respond to Stephanie's argument that under WIS. STAT. § 767.41(3)(a), if Tamara was unable to care for Jasmine or unfit to do so, the statutes direct the court to relatives or a county child welfare agency, therefore, a placement with Danielle, a non-relative was inappropriate. We conclude that the GAL has conceded this argument. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (concluding that a lack of response by a party may be taken as a concession). Nevertheless, we consider

Stephanie's legal argument underdeveloped.[14] We will not develop arguments for parties. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (explaining that we may decline to review arguments inadequately briefed, not reflecting legal argument, or unsupported by references to legal authority). Although we conclude we can resolve this matter without addressing the application of this statute, the circuit court may need to address it to resolve the matter on remand, specifically whether Jasmine may be placed with a non-relative.

## CONCLUSION

¶26 Ultimately, we conclude that the circuit court failed to apply the proper standard of law to this contested guardianship and did not demonstrate a rational decision-making process; therefore, the circuit court erroneously exercised its discretion. *See Robin K.*, 291 Wis. 2d 333, ¶12. We reverse the circuit court's order granting guardianship to Danielle and we remand for further proceedings consistent with this decision. Additionally, because we conclude that the order granting guardianship was an erroneous exercise of discretion, Stephanie's challenges to the guardianship were not frivolous and we direct the circuit court to vacate the order imposing costs and fees against Stephanie on March 12, 2020.

---

[14] Our own review of case law suggests that we have previously considered ch. 767 instructive in interpreting "best interest" within the terms of previous guardianship statute, ch. 880. We reviewed the best interest of the child factors under WIS. STAT. § 767.24(2) (1999-2000), and we concluded that "[i]n the absence of an alternate definition or explanation, we are satisfied that § 767.24(5), STATS. sets out an appropriate standard for determining the 'best interests of the child'" in the ch. 880 guardianship statute at issue there. *F.R. v. T.B.*, 225 Wis. 2d 628, 642, 593 N.W.2d 840 (Ct. App. 1999). "When lawmakers knowingly use the same phrase or terminology in two different statutes addressing similar topics, we presume that the legislature intended them to have the same meaning in both statutes." *See id.* at 639.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.