COURT OF APPEALS
DECISION
DATED AND FILED

October 30, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.        **2024AP907**

STATE OF WISCONSIN

Cir. Ct. No.  2023TP8

IN COURT OF APPEALS
DISTRICT II

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.N.W., JR., A PERSON UNDER THE AGE OF 18:

SHEBOYGAN COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

A.W., SR.,

   RESPONDENT-APPELLANT.

        APPEAL from an order of the circuit court for Sheboygan County: SAMANTHA R. BASTIL, Judge. *Affirmed*.

¶1     NEUBAUER, J.[1]  A.W., Sr., referred to herein by the pseudonym Adam, appeals from an order terminating his parental rights to his son Sam (also a pseudonym).  Adam asserts that the circuit court failed to take testimony to support a finding of unfitness as required by WIS. STAT. § 48.422(3) when he pled no contest at the grounds hearing and that this error was prejudicial.  He also contends that the court erroneously exercised its discretion in concluding that termination of his parental rights would be in Sam's best interest.  This court affirms.

## BACKGROUND

¶2     The termination of parental rights proceeding at issue in this appeal is based on an earlier "CHIPS" case for Sam.[2]  The circuit court found Sam to be a child in need of protection or services on October 29, 2020, and entered a dispositional order that contained the termination of parental rights notice.  Sam was placed outside of his parents' home.  The court adjudicated Adam as Sam's father on April 19, 2021.  On October 22, 2021, the court revised the dispositional order to add Adam, and that order also contained the termination of parental rights notice.

¶3     In April 2023, the Sheboygan County Department of Health & Human Services (the County) filed a petition seeking to terminate the rights of

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  "'CHIPS' is a commonly used acronym for 'child in need of protection or services.'" *Eau Claire Cnty. Dep't of Hum. Servs. v. S.E.*, 2020 WI App 39, ¶1 n.3, 392 Wis. 2d 726, 946 N.W.2d 155, *aff'd*, 2021 WI 56, 397 Wis. 2d 462, 960 N.W.2d 391; *see also* WIS. STAT. § 48.13. The CHIPS case related to the termination of parental rights proceeding at issue in this appeal was also venued in the Sheboygan County Circuit Court.

Adam and Sam's mother.[3]  The petition asserted two grounds for termination of Adam's rights.  First, the petition alleged that Sam was a child in continued need of protection or services.  *See* WIS. STAT. § 48.415(2).  Second, it alleged that Adam had failed to assume parental responsibility for Sam.  *See* § 48.415(6).

¶4      At a hearing in December 2023, Adam agreed to plead no contest to the first ground alleged in the petition—that Sam was a child in continued need of protection or services—in exchange for the County's agreement to dismiss the second ground.  The circuit court conducted a thorough colloquy with Adam to ensure his plea was given freely, voluntarily, and intelligently.  Adam repeatedly confirmed that he understood the consequences of his plea, that he had no questions and he confirmed that he understood that there was "clear, convincing, and satisfactory evidence" as to this ground alleged in the petition.  Adam's attorney affirmed that there was a factual basis for the plea to this ground as alleged in the petition.  At the end of the colloquy, the court accepted the plea and dismissed the second ground.  The court then asked the County's attorney if he intended to call the social worker assigned to Sam's case.  The lawyer responded that he had planned to present her testimony at the disposition hearing to "go through some of the facts just to support the counts."  Adam's attorney told the court that proceeding in that fashion was acceptable to him.

¶5      The circuit court held the disposition hearing in January 2024.  Adam was incarcerated at the time of the hearing and chose to appear via telephone.  The County presented testimony from the social worker, Tanya DesArmo, and Sam's foster mother, M.S.  Adam also testified.

---

[3] Sam's mother's parental rights have been terminated.

¶6     DesArmo testified that she prepared a court report regarding Sam's case that had been previously filed with the court and affirmed that its contents were true and accurate to her knowledge.  It was also reviewed by her supervisor.  The court report identifies the conditions under the dispositional order that needed to be met for the safe return of Sam to the home.  It further includes an extensive explanation of the various efforts made by the County to provide services and describes in detail Adam's failure to meet the conditions.

¶7     DesArmo reviewed some of the information in the report.   She confirmed that a dispositional order adjudging Sam to be a child in need of protection or services had been entered against Sam's mother in October 2020 and then extended to Adam after he was adjudicated Sam's father in April 2021. DesArmo testified that Adam had been incarcerated since April 2020, when Sam was seven months old.  Sam has been in continuous out-of-home placement since he was originally removed from the home on August 26, 2020.

¶8     Adam is not scheduled for release from prison until April 2026. Adam was offered services through the prison system's earned release programs and had three opportunities to be released early.  However, he was unable to follow the rules and demonstrate change in order to successfully participate and complete the programming.  Among other things, staff reported that he was not focused on treatment, was not making changes in his life, and wrote a letter to Sam's mother explaining how to fake a drug screen.  He also violated a no contact order with Sam's mother (he was in prison due to domestic violence crimes against her) in violation of his sentence and made derogatory and threatening comments to her and the foster mother, M.S.  DesArmo testified that because Adam had not been consistent with any rehabilitative programming in prison, despite several opportunities, he had not received early release.

¶9 Sam believes he is part of his foster parent's family. The last time Adam had contact with Sam was in early October 2023, more than three months before the January 2024 dispositional hearing. Sam had gone extended periods—three to six months—without contact with Adam, and based on DesArmo's observations, it did not concern Sam. Aside from phone calls, some written letters and cards, Adam had a few visits with Sam by video. M.S. occasionally had to force Sam to have a phone conversation with Adam. DesArmo was not aware of an instance when Sam had "sought out his father or asked to speak to him for comfort or in time of need for any reason." Based upon their limited contact during Adam's incarceration, DesArmo did not believe he and Sam had a substantial relationship.

¶10 M.S., Sam's foster parent, testified that Sam had been living with her since July 30, 2021. She affirmed that Sam's contact with Adam since that time had been by phone or video, and some letters. She confirmed Sam's last contact with Adam was three months before the hearing and that Sam did not ask for Adam or speak about him. He did not really understand that Adam was his father; he just took phone calls from him because he was asked to do it.

¶11 The circuit court also listened to a recording provided by Adam of phone calls between Adam and Sam, who was accompanied by M.S. After listening to the calls, the court stated that the calls made it clear that Adam did not have a substantial relationship with Sam. The court went into detail about the content of the calls, explaining that the calls revealed Sam did not understand the individual on the phone was his father, and M.S. had to try and redirect Sam during the calls to even pay attention to Adam.

¶12     Adam disputed the frequency of his interactions and blamed DesArmo and M.S. for impeding his efforts to communicate with Sam.  For example, according to DesArmo, he claimed he was calling Sam weekly.  However, Adam provided his phone records to DesArmo, who reviewed them and testified that there were various periods of time when Adam did not call Sam for three to five weeks.  DesArmo wrote in her report that Adam "wanted things to be done his way and would become upset if that did not happen and blame [her] or others."

¶13     After reviewing the testimony and evidence, the circuit court concluded that it was in the best interests of Sam to terminate Adam's parental rights.

¶14     Adam appealed the circuit court's order but later filed a motion seeking to remand the case to the court for a fact-finding hearing with respect to the court's failure to hear testimony to establish a factual basis for the ground to which Adam pled no contest.  After this court granted Adam's motion, the circuit court held a hearing on Adam's postdisposition motion.  The court reviewed the testimony and other evidence presented at the disposition hearing and found "that there is a factual basis for [Adam] to not contest the allegations in the petition as it relates to" the ground of continuing need of protection or services.  Adam then testified about the circumstances under which he decided to plead no contest in an effort to show that his plea had not been free, knowing, and voluntary.  At the conclusion of his testimony, the court concluded that he had not shown a basis to withdraw his plea and that the record showed that he freely, knowingly, and

voluntarily pled no contest to the continuing need of protection or services ground.[4] The court denied Adam's challenge.

¶15 Adam appeals.[5]

## DISCUSSION

### I. Testimony in Support of Grounds for Unfitness

¶16 Termination of parental rights proceedings involve two phases: the grounds phase and the dispositional phase. *See **Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.***, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402. In the grounds phase, the finder of fact must determine whether the government establishes the ground or grounds it pleaded "for involuntary termination under WIS. STAT. § 48.415." ***Tammy W-G. v. Jacob T.***, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854. If the fact finder determines that the government has established grounds to terminate under § 48.415, "the court shall find the parent unfit." WIS. STAT. § 48.424(4). The proceeding then enters the second, dispositional phase, during which "the court is called upon to decide whether it is in the best interest of the child that the parent's rights be permanently extinguished." *See **Steven V. v. Kelley H.***, 2004 WI 47, ¶27, 271 Wis. 2d 1, 678 N.W.2d 856; *see also* WIS. STAT. § 48.426(2).

---

[4] On appeal, Adam does not challenge the circuit court's determination that his plea was freely, knowingly, and voluntarily made at the grounds phase.

[5] The guardian ad litem was also involved in the circuit court proceeding and supported the County's efforts, as he does on appeal with a separate brief.

¶17 Here, Adam pled no contest at the grounds phase. His primary argument before the circuit court and on appeal is that the circuit court violated WIS. STAT. § 48.422(3) because it did not, as the statute requires, "hear testimony in support of the allegations in the petition" at the grounds phase. He argues that the court's failure to hear testimony prejudiced him because the record does not reveal a factual basis for the ground to which he pled no contest—that Sam was in continuing need of protection or services.

¶18 Adam is correct that the circuit court erred when it failed to take testimony at the time of his no contest plea. *See* WIS. STAT. § 48.422(3). Specifically, he complains that the court erred in failing to establish that there is a factual basis for the continuing need ground. However, our supreme court has held that this error is harmless when the factual basis for the allegations in the petition may "be teased out of" other parts of the record. **Waukesha County v. Steven H.**, 2000 WI 28, ¶¶56-58, 233 Wis. 2d 344, 607 N.W.2d 607; *see also* **Kenosha Cnty. Div. of Child. & Fam. Servs. v. J.M.C., III**, No. 2023AP1824, unpublished slip op. ¶21 (WI App Mar. 13, 2024), *review denied*, 2024 WI 33, 9 N.W.3d 290; **State v. I.A.A.**, Nos. 2023AP1723 and 2023AP1724, unpublished slip. op. ¶¶17-18 (WI App Feb. 28, 2024), *review denied*, 2024 WI 33, 9 N.W.3d 290.[6]

¶19 Whether the court's failure to take testimony as prescribed by WIS. STAT. § 48.422(3) was harmless is a question of law this court reviews de novo. *See* **State v. Jackson**, 2014 WI 4, ¶44, 352 Wis. 2d 249, 841 N.W.2d 791. In

---

[6] Unpublished decisions may be cited for their persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

determining whether Adam was prejudiced, this court is to review the entire record and the totality of the circumstances. *See Steven H.*, 233 Wis. 2d 344, ¶4.

¶20 Adam pled no contest to one ground to terminate his parental rights—Sam's continuing need of protection or services. *See* WIS. STAT. § 48.415(2). As relevant here, that ground requires proof of three things: (1) "the child has been adjudged to be a child … in need of protection or services and placed … outside his or her home pursuant to one or more court orders" containing the parental rights notice; (2) "the agency responsible for the care of the child … has made a reasonable effort to provide the services ordered by the court"; and (3) "the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1. [and] the parent has failed to meet the conditions established for the safe return of the child to the home." *See* § 48.415(2)(a)1.-3.

¶21 As to the first element, the record shows that court orders placed Sam in out-of-home placement for six months or longer because he was removed from the home in August 2020 and was never returned. DesArmo's testimony and report detail that a dispositional order was entered against Sam's mother in October 2020 and extended to Adam after he was adjudicated Sam's father in April 2021. Sam has been in continuous out-of-home placement since he was originally removed from the home on August 26, 2020.[7]

---

[7] DesArmo's report may be considered evidence in support of the allegations under WIS. STAT. § 48.422(3) when accompanied by the testimony of the social worker who prepared it. *See Dane Cnty. Dep't of Hum. Servs. v. Angela M.K.*, Nos. 2012AP578 and 2012AP579, unpublished slip op. ¶¶18-20 (WI App May 24, 2012). DesArmo testified at the dispositional hearing, was available to discuss the details in her report, and was subject to cross-examination.

(continued)

¶22     The second element of WIS. STAT. § 48.415(2)(a) is whether the County made a reasonable effort to provide the court ordered services. DesArmo detailed the programming required for Sam's safe return, including case management services, coordinating visits/calls between Adam and Sam, and providing information or referrals for services within the community to assist Adam. Because Adam had been incarcerated since he was adjudicated Sam's father, he was offered services through the prison system's earned release program, including AODA treatment and a parenting program, which, if successfully completed, allowed for early release from prison. The report also discusses anger management and domestic violence programing. The report provides an extensive explanation of the various efforts made to provide services

---

In his reply brief, Adam complains that the CHIPS order was not admitted into evidence and suggests that, as a result, the County failed to prove the conditions for return. This is not accurate, as the conditions were identified in DesArmo's court report. Moreover, Adam did not raise his challenge before the circuit court at any point. He did not raise this challenge at the hearing at which he pled no contest, the disposition hearing, or postdisposition hearing. Generally, this court does not decide issues raised for the first time on appeal. *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). Moreover, Adam does not develop this argument or contend that he did not receive the dispositional order. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals declines to address undeveloped arguments). Requiring that issues be raised and argued in the circuit court achieves the important objectives of allowing that court "to correct or avoid the alleged error in the first place, eliminating the need for appeal"; "giv[ing] both parties and the [circuit court] notice of the issue and a fair opportunity to address the objection"; "encourage[ing] attorneys to diligently prepare"; and "prevent[ing] attorneys from 'sandbagging' errors, or failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." *State v. Huebner*, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727 (citation omitted). Adam's argument is precisely the type of challenge that is forfeited because it could have been readily addressed during proceedings in the circuit court by, for example, the submission of a certified copy of the dispositional order.

In any event, when asked at the postdisposition hearing whether he received the dispositional order, as well as subsequent orders after two permanency hearings, Adams said he did not remember but acknowledged that he might have. Adam's testimony, in which he contended that he was working on meeting the conditions for return, also indicates that he was aware of the conditions.

and Adam's failure to meet the conditions. Adam does not develop any substantive argument that this information provided at the dispositional hearing, including the report's facts regarding the conditions, the efforts, and Adam's failure to meet the conditions for the child's safe return, did not adequately support the ground of unfitness. This court will not develop Adam's arguments for him, and thus, need not address this issue further.

¶23 Accordingly, although the circuit court erred when it failed to take testimony at the time it accepted Adam's no contest plea, a review of the entire record confirms that a factual basis for the allegations in the petition setting forth the unfitness ground "can be teased out of the testimony of other witnesses at other hearings when the entire record is examined." *See Steven H.*, 233 Wis. 2d 344, ¶58. This court therefore concludes that Adam was not prejudiced by the circuit court's error.

## II. The Circuit Court's Termination Decision

¶24 Adam's other argument is that the circuit court erred in concluding that termination of his parental rights was in Sam's best interest. A circuit court's "determination of a child's best interests … depends on firsthand observation and experience with the persons involved and, therefore, is left to the discretion of the [circuit] court." *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). Accordingly, this court will not set aside a termination decision "unless that discretion is erroneously exercised." *Waukesha Cnty. Dep't of Health & Hum. Servs. v. Teodoro E.*, 2008 WI App 16, ¶25, 307 Wis. 2d 372, 745 N.W.2d 701 (2007). In applying this deferential standard of review, this court looks at whether the circuit court "examine[d] the relevant facts, applie[d] a proper standard of law, and using a demonstrated rational process reache[d] a conclusion

that a reasonable judge could reach." ***State v. B.W.***, 2024 WI 28, ¶70, 412 Wis. 2d 364, 8 N.W.3d 22 (citation omitted). "We look for reasons to sustain a [circuit] court's discretionary decision." ***Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.***, 2009 WI 73, ¶32, 319 Wis. 2d 52, 768 N.W.2d 596.

¶25 In considering the best interests of the child the court shall consider but not be limited to the following:

> (a) The likelihood of the child's adoption after termination[;]
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home[;]
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships[;]
>
> (d) The wishes of the child[;]
>
> (e) The duration of the separation of the parent from the child[; and]
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3)(a)-(f).

¶26 Here, the circuit court set forth its extensive findings and discussed each of the factors set forth in WIS. STAT. § 48.426(3) and, after weighing the evidence presented, determined that terminating Adam's parental rights was in Sam's best interest.

¶27 As to the first factor, the circuit court found that the likelihood of adoption was high: Sam had been in the foster home of M.S. for the past two and

one-half years, and M.S. is a licensed foster parent and an adoptive resource willing to adopt Sam. As to his age, the second factor, the court found that Sam was currently four years old, "happy, healthy, active [and] thriving" in M.S.'s home. While Sam had some developmental delays when he was removed from Adam's home, he had progressed to the point that he was enrolled in both 3k and 4k school programs.

¶28     The only family member other than Adam with whom Sam had any real contact was Adam's twenty-year-old daughter, although the relationship did not go well when Sam was in her care at her residence and she was not interested in maintaining a relationship with Sam.

¶29     As discussed above, the circuit court made extensive findings, including findings made after listening to recorded phone calls between Adam and Sam, to conclude that Adam did not have a substantial relationship with Sam and that it would not be harmful to sever the relationship, the third factor.

¶30     As to Sam's wishes, the fourth factor, the circuit court observed that Sam was too young to verbally express what he wants, but his actions and behavior led the court to conclude that Sam is happy in the home of M.S. and wanted to stay there. Sam did not ask for his father despite not having heard from him in months; Sam referred to M.S. as mom and lacked interest in wanting to engage with Adam on the phone when he did call.

¶31     Regarding the duration of separation, the fifth factor, Sam had been in M.S.'s home for over half his life and had been separated from Adam since Sam was seven months old when Adam went to prison.

¶32 Noting that Sam had three prior placements in households that were not able to manage his care, the court found that Sam was thriving in the home of M.S. Sam would be able to continue in a stable and permanent family relationship with termination, the sixth factor.

¶33 Adam does not contend that the circuit court did not consider each factor. Instead, his challenge focuses on the substantial relationship factor. While he contends that he has a substantial relationship with Sam, he does not develop this argument or set forth any facts to show this. Rather, he points to his testimony that he was not provided sufficient support to keep in contact with Sam, contending that DesArmo intentionally impeded his efforts. Several of Adam's contentions were disputed by DesArmo. For example, Adam contends that he called Sam weekly, which was disputed by DesArmo after reviewing his phone records from the prison.

¶34 In effect, Adam's complaints largely relate to the grounds phase question of whether the County made reasonable efforts to assist him in meeting the conditions for the safe return of his child. However, Adam does not offer his testimony to dispute the circuit court's determination that the facts alleged adequately support the court's finding of unfitness at the grounds phase.

¶35 To the extent that Adam offers his contentions regarding his efforts to communicate with Sam in the context of the best interests analysis (or the grounds phase, for that matter), the weighing and balancing of the evidence, the credibility of the witnesses, and the findings of fact are left to the circuit court, and it is Adam's burden to demonstrate that the court clearly erred. *See Nicholas C.L. v. Julie R.L.*, 2006 WI App 119, ¶23, 293 Wis. 2d 819, 719 N.W.2d 508 ("[T]he [circuit] court is the ultimate and final arbiter of the credibility of witnesses, and

we must accept the [circuit] court's credibility determination[s].");  ***State v. Carter***, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695 ("[T]his court will not exclude the circuit court's articulated assessments of credibility and demeanor, unless they are clearly erroneous."); ***State v. Pico***, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95 ("We will not reverse the circuit court's findings of fact unless they are clearly erroneous.").  Here, Adam has failed to show that the circuit court's determination that he and Sam did not have a substantial relationship was based on clearly erroneous factual findings.

¶36    In sum, the record shows that the circuit court did not erroneously exercise its discretion in terminating Adam's parental rights to Sam.  Adam has not met his burden to demonstrate that the circuit court erred, and this court affirms the court's order.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.